On October 6, 1979, appellant, Paula Ann Steinmetz, and appellee, Charles G. Steinmetz, were married. During the course of the marriage, appellant worked as a dental assistant and appellee worked in the environmental cleaning industry. On December 9, 1996, appellee filed a complaint for divorce. A hearing before a magistrate was held on February 6, 1998. By decision filed April 9, 1998, the magistrate made recommendations as to spousal support and the division of the parties' property.
On April 22, 1998, appellant filed numerous objections to the magistrate's decision. A hearing was held on October 26, 1998. By judgment entry filed November 4, 1998, the trial court granted in part and denied in part appellant's objections. The trial court approved and adopted the magistrate's decision with modifications.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS A MATTER OF LAW WHEN IT FAILED TO IMPUTE INCOME TO THE PLAINTIFF AND FAILED TO AWARD SPOUSAL SUPPORT TO THE DEFENDANT.
II
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS A MATTER OF LAW WHEN IT FAILED TO DETERMINE CERTAIN PROPERTY BELONGING TO DEFENDANT-APPELLANT TO BE SEPARATE PROPERTY UNDER O.R.C. 3105.17.1 AND TO DISBURSE IT TO HER ACCORDINGLY.
III
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS A MATTER OF LAW WHEN IT INAPPROPRIATELY DETERMINED THE VALUE OF THE DEFENDANT-APPELLANT'S JEWELRY.
 I
Appellant claims the trial court erred in not imputing income to appellee and in not awarding her spousal support. We disagree.
The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We are also guided by the language of Kunkle v. Kunkle (1990),51 Ohio St.3d 64, paragraph one of the syllabus:
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
Furthermore, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v.Garson (1993), 66 Ohio St.3d 610.
R.C. 3105.18(C)(1) sets forth factors the trial court shall consider in determining spousal support:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
As noted above, the trial court is to consider the relative earning ability of the parties and their standard of living. Appellant argues appellee voluntarily terminated his employment earning some $81,000 per year and took a job with a substantially less salary ($360.00 per week). Further, appellant argues because the marriage lasted some twenty years with appellant's income ability at a maximum of $22,631.17, the trial court should have awarded spousal support.
By decision filed April 9, 1998, the trial court made specific findings regarding appellee's salary and earning ability:
 13. Plaintiff's average salary for the years 1992 through 1996 was approximately $80,000.00. This did include some bonuses. Due to changes in the industrial/environmental cleaning market, however, Plaintiff has been unable to duplicate that salary since has (sic) employment with Pro Vac ended in 1996. The environmental/industrial cleaning industry has experienced a changing climate as a result of mergers, competition and increasing equipment cost. As a result of these factors, the positions and jobs that Plaintiff has held have either become non-existent or moved from the Midwest area.
 14. Plaintiff's employment in the industrial cleaning/environmental technology area as a sales manager/job coordinator is not available in today's market at his previous salary levels.
 15. Plaintiff's parents are not in good health, and Plaintiff helps care for them. They live in the Brewster area. Consequently, Plaintiff cannot move from the area to obtain employment outside of this state.
From these findings, the trial court ordered no spousal support, approving and adopting the magistrate's Recommendation No. 9:
 9. The undersigned finds that permanent spousal support is inappropriate in this matter due to Defendant's continual work history throughout the marriage, the fact that Defendant has obtained her maximum earning ability for her chosen profession, and that Defendant was not prohibited during the marriage from obtaining skills and/or training to increase her earning ability. Defendant's current salary level, in conjunction with her separate property (CD's valued at $16,075.04) and her share of the marital property (including greater value of IRA and substantial cash from the sale of parcels of real estate) is adequate to sustain her lifestyle, and is in fact in excess of Plaintiff's current level of available assets and/or earnings. Further, the Plaintiff sufficiently demonstrated an inability to duplicate previous levels of income as earned during the marriage at jobs which are no longer available in this area and which were terminated for various reasons beyond his control prior to the parties separation.
The crux of appellant's challenge to Recommendation No. 9 is that the evidence was insufficient to establish why the trial court should not impute income to appellee. Appellant argues appellee's accountant, Samuel Wormser, was not qualified to opine that appellee's salary level was no longer available in appellee's profession. Mr. Wormser has done work for some sixteen to eighteen industry related companies and in fact owned a company that supplied parts and accessories to the industry. T. at 17. We find Mr. Wormser was indeed qualified to render an opinion. Mr. Wormser's testimony as to appellee's earning ability was very limited:
 MS. GEERS: Let me rephrase that in this immediate area . . . . do you have any knowledge, um, personal knowledge direct knowledge, if he would be able to obtain employment in this field?
THE COURT: Define immediate area?
 MS. GEERS: Surrounding states, this State, surrounding States?
 A: He could become an employee, but he would not be making the money he was making in the past.
T. at 18-19.
Appellee gave the following explanation as to why he left his employment higher salary range:
 A: I left Cousins for a couple of reasons, one that we were actively involved at that point at trying to sell the company, so I new (sic) my position was such that I worked with the owner of the company and it turns out why I was brought into the company was to re-enforce the bottom line so it would be more attractive for a sale . . . . so I had inside knowledge that we were going to sell that company to someone and the other reason, I wanted to try and work closer to home.
 Q: Now the sale of the company what was your understanding how that would effect your job?
 A: Well, because of the size of Cousins we knew that the only people that were going to buy us . . . . that could afford to buy us would be a larger publically (sic) traded corporation and um, the terms of the sale of course, would protect the family, a lot of the management was Barry Cousins direct family and knowing how those things traditionally work in that business I was not . . . . didn't feel real good about having continued employment there after the sale had taken place.
* * *
 MS.GEERS: When you say you didn't feel real good about that . . . . that you did not feel real good?
 A: Well traditionally at my salary level when a company is, the salary that I enjoyed at Cousins, a company is . . . . I would be redundant at my level to the companies management that was buying the company as an example a lot of companies in that business had been acquired either by Chem Waste Management or Phillips Environmental . . . where traditionally everyone . . . . the owner is generally secured employment for x number of years as part of the condition of sale, um, vice president level, which that is what I was, is there traditionally replaced by people from Chem Waste or the company that's buying them, simply because they better transform that company into the way the parent company does business.
T. at 50-51.
Appellee further explained he had turned down a move with a previous employer because he wanted to stay closer to home. T. at 52-53. Appellee explained he had not sought employment that would take him out of state because of his parents' age and poor health. T. at 53-54. Also, appellee was tired of the amount of time and energy needed to do the job i.e., seven days a week, twenty-four hours a day, gone two hundred nights a year. T. at 53, 129. Appellee testified the number of companies doing environmentally related work in Ohio has been reduced from one hundred to "probably ten or less." T. at 128. Appellant never challenged the testimony concerning appellee's reasons for terminating his employment and choosing another job except to reiterate that appellee quit Cousins.
Based upon the unrefuted testimony concerning the change in industry coupled with appellee's explanations, we find the decision not to impute income to appellee is substantiated by the record and was not an abuse of discretion. Given the parties' respective incomes and the division of property, the trial court did not err in denying spousal support.
Appellant also argues the trial court erred in considering her separate property (interest from her CDs valued at $16,075.04) in determining her net income. See, Recommendation No. 9. We do find it is inappropriate to impute interest income from premarital assets to one party. Although we find this to be a technical error, we find the available interest income on $16,000.00 of approximately $1,600.00 per year at ten percent to be of no consequence to the issue decided by the trial court.
Assignment of Error I is denied.
 II, III
Appellant claims the trial court erred in failing to determine that all of her jewelry and a $5,000.00 CD were her separate property. Appellant also claims the trial court erred in valuing the jewelry. We agree in part.
 JEWELRY
The trial court awarded all of the jewelry to appellant but equally divided the value ($45,000.00) between the parties. See, Judgment Entry filed November 4, 1998. Appellee testified he purchased various pieces of jewelry for appellant for special occasions i.e., birthday, anniversary, Christmas. Appellee considered the pieces to be investments, but admitted he gave them to appellant as gifts. T. at 95-96. Appellee admitted "if your appraisals are correct and mine are not they weren't very good investments." T. at 95. Appellee purchased the jewelry himself with marital funds. T. at 131.
Appellant was able to generally pinpoint the various occasions for which she received jewelry and she testified she considered the jewelry pieces to be gifts. T. at 153-156. At one time appellant had more jewelry than what was on the appraisal but in 1994, appellant was angry with appellee so she threw some of her jewelry into the Tuscarawas River. T. at 158-159.
The credibility of testimony lies in the trial court's sound discretion. State v. Jamison (1990), 49 Ohio St.3d 182;Blakemore. Upon review, we find the evidence leads to but one conclusion, the jewelry pieces were gifts. The trial court erred in dividing the value of the jewelry as appellant should retain her gifts free and clear from any division. Given this finding, the issue of valuation is moot.
 $5,000.00 CD
The trial court determined the $5,000.00 CD was marital property and awarded one-half of its value to appellee. See, Judgment Entry filed November 4, 1998. In Finding of Fact No. 24, the trial court found "[t]he $5,000.00 CD was previously in the parties joint names until Defendant, without Plaintiff's knowledge, put it in her sole name, sometime prior to September, 1996." Appellant moved out of the marital residence on September 12, 1996. See, Finding of Fact No. 3. Appellant testified she "thought" the CD was part of her aunt's estate. T. at 164.
In its judgment entry of November 4, 1998, the trial court found appellee's premarital lumber used in the marital residence "subsumed into the marital property (residence) and no separate award should be made to the Plaintiff." It is not inconsistent to find a CD held in the parties' joint names and then later changed into appellant's name before she moved out to have also become marital property. Upon review, we find no abuse of discretion by the trial court in treating each transmuted property equally as marital property.
Assignment of Error II is granted as to the jewelry and denied as to the CD. Assignment of Error III is moot.
The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed in part, reversed in part and remanded.
By Farmer, J., Wise, P.J. and Hoffman, J. concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed in part, reversed in part and remanded to said court for further proceedings consistent with this opinion. Costs to appellant.
---------------------------
---------------------------
 --------------------------- JUDGES