THE STATE OF OHIO, APPELLEE, *v.* JAMISON, APPELLANT.

[Cite as State *v.* Jamison (1990), 49 Ohio St. 3d 182.]

(No. 88-1286—Submitted November 14, 1989—Decided March 7, 1990.)

*Arthur N. Ney, Jr.*, prosecuting attorney, and *William E. Breyer,* for appellee.

*William E. Flax* and *Peter Pandilidis,* for appellant.

ALICE ROBIE RESNICK, J.

## I

The crucial question we decide today involves the admissibility of other acts to establish an accused's identity of the charged offenses. We find the other acts, *i.e.*, robberies, forming a unique, identifiable plan of criminal activity, sufficiently probative as to identity to warrant their admission. To be admissible, these other acts must tend to show by substantial proof "identity" or other enumerated purposes under Evid. R. 404(B). Although the standard for admissibility is strict, the other acts need not be the same as or similar to the crime charged. We also find appellant's other propositions of law without merit. We affirm his convictions and death sentence.

Appellant argues that the other-acts evidence, *i.e.*, seven robberies, had no clear focus, but simply a diffused pattern. He argues they were sufficiently dissimilar in details to the charged offenses as not to form a common plan or scheme which would establish appellant's identity. Appellant points out that "[b]ecause R.C. 2945.59 and Evid. R. 404(B) codify an exception to the common law with respect to other acts of wrongdoing, they

must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. * * *" *State* v. *Broom* (1988), 40 Ohio St. 3d 277, 533 N.E. 2d 682, paragraph one of the syllabus. Appellant asserts that a variety of businesses were robbed, that the offenses occurred over several months, and that the robber acted alone or with an accomplice. Sometimes the robber used a firearm; at other times, no gun was observed. Also, the robber escaped on foot or by bicycle. Despite these differences, we find sufficient similarities to demonstrate a unique, identifiable plan of criminal activity.

The facts of the other robberies were as follows:

On June 18, 1984, appellant robbed Orville Smith, a sixty-five-year-old clerk at Acres of Books. A patron found Smith alone, face down, unconscious, head injured, and the cash register open and empty.

On June 27, 1984, Jack G. West owned the Metropolitan Gallery. West testified appellant "came into my business and proceeded to attack me, rob me, beat me and leave me for dead." West suffered a "[s]kull fracture, brain damage, head lacerations, other minor injuries." He woke up five days later in the hospital. Police found jewelry belonging to West when they arrested appellant on October 12.

On August 7, appellant robbed the Save discount store with an accomplice. Forcing the store manager to the floor, appellant put a gun to her forehead. Appellant forced the manager to open the register but took the money out himself. As they were leaving, appellant struggled with and robbed a patron who fell to the floor. Appellant returned to where the manager was lying on the floor and kicked her in the face three or four times.

On September 5, appellant robbed the owner of Rensler Portrait Studio, another small family business. Appellant dragged June Rensler to the back of the studio by her hair. He held a gun to her face. After tying her up, he kicked her. He then opened the register himself and took the money.

On September 8, 1984, appellant robbed the Kings News. He made the cashier get down on the floor and "put * * * a gun on * * * [her] face." After he took the money from the register, appellant put a gun to another worker's head and told him "if he made a move, he would blow him away." Appellant took another gun from Kings News that police found on his person at the time of arrest.

On October 5, 1984, appellant robbed the Curve Cafe, another bar. He put a gun to one victim's head, threatening "to blow her brains out." He attempted, unsuccessfully, to open the register and, finally, took money from an envelope behind the bar. He forced or threw all victims to the floor and robbed them.

The last of these robberies was Gold Star Chili on October 12. At Gold Star Chili, appellant pulled out a gun, jumped over the counter and physically took money from the cash register. He threw a patron to the floor and robbed him. All the foregoing robberies occurred near downtown Cincinnati in close proximity to each other, during weekday afternoons, except for one which occurred on a Saturday evening. The places robbed were all first floor on-the-street, walk-in businesses.

Under longstanding principles of Anglo-American jurisprudence, an accused can not be convicted of one crime by proving he committed other crimes or·is a bad person. As Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove. the character of a person in

order to show that he acted in conformity therewith." Nonetheless, evidence of other acts, though they be crimes, may be admissible for other purposes. Evid. R. 404(B) specifies admissibility to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." R.C. 2945.59, predating Evid. R. 404(B), mandates admissibility for specific purposes such as defendant's scheme, plan or system. Nonetheless, "the standard for determining admissibility of such evidence is strict." *State* v. *Broom, supra.*

We have long recognized the utility of other acts in order to establish identity. In *Barnett* v. *State* (1922), 104 Ohio St. 298, 135 N.E. 647, involving other acts to prove identity, we noted:

"* * * 'The law will not suffer itself to be handicapped by limiting the means or methods of identification to physical characteristics. Where the identity of the defendant is the question in issue, any fact which tends to establish the identity has probative value and is none the less competent evidence because it establishes a collateral fact nor because proof of such fact may incidentally involve proof of the commission of another offense. If the fact tends to establish the identity of the accused, it is competent evidence, no matter what else it may prove * * *.' " *Id.* at 303, 135 N.E. at 649.

In *Whiteman* v. *State* (1928), 119 Ohio St. 285, 164 N.E. 51, we held evidence of other robberies properly admitted on identity. In that armed-robbery case, we said, at 294, 164 N.E. at 53:

"* * * [C]riminals are discovered in many instances by certain characteristics, plans, and methods followed in the commission of offenses. This is more especially true where criminals pursue a life of crime for any con-

siderable time. It would be a serious handicap to those whose business it is to ferret out, detect, and punish crime, to deny resort to such characteristics in bringing accused persons to justice."

In *State* v. *Hector* (1969), 19 Ohio St. 2d 167, 48 O.O. 2d 199, 249 N.E. 2d 912, in another robbery-murder case we reversed where evidence of other robbery acts was admitted. We held that "[t]o make such evidence relevant to the issue of *identity,* the evidence must indicate that essentially the same plan, system or method has been followed." (*Id.* at paragraph three of the syllabus.) Appellant strongly argues that decision should control this case.

We find *State* v. *Hector, supra,* distinguishable. In that case, we applied R.C. 2945.59, which did not specifically mention identity. Nonetheless, we recognized identity might be included in the *same* plan, system or method. *Id.* at 176, 48 O.O. 2d at 204-205, 249 N.E. 2d at 917-918; *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 73, 72 O.O. 2d 37, 41, 330 N.E. 2d 720, 725-726.

In appellant's case Evid. R. 404(B) controls, since it was adopted subsequent to the statute. It specifically includes identity as a permissible use of other-acts evidence. Additionally, in *State* v. *Hector, supra,* the state did not prove clear linkage and common features as we will demonstrate were present in the instant case. Thus, *State* v. *Hector, supra,* does not control.

In cases since *State* v. *Hector, supra,* we have increasingly recognized the utility of other-acts evidence. In *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, 60 O.O. 2d 95, 285 N.E. 2d 726, a robbery-murder trial, we held evidence of two other robberies admissible. We noted, at 126, 60 O.O. 2d at 96-97, 285 N.E. 2d at 729:

"Much confusion about R.C. 2945.59 might be avoided if it were observed that nowhere therein do the words 'like' or 'similar' appear. The statute permits the showing of 'other acts' when such other acts 'tend to show' certain things. If such other acts do in fact 'tend to show' any of those things, they are admissible notwithstanding they may not be 'like' or 'similar' to the crime charged."

Evid. R. 404(B) confirms this view by eliminating any requirement that the acts be like or similar.

In *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 512 N.E. 2d 611, and *State* v. *Broom, supra,* we readily accepted other-acts evidence when it assisted in establishing identity. See, also, *State* v. *Coleman* (1989), 45 Ohio St. 3d 298, 544 N.E. 2d 622. Cf. *State* v. *Coleman* (1988), 37 Ohio St. 3d 286, 291, 525 N.E. 2d 792, 798; and *State* v. *Moorehead* (1970), 24 Ohio St. 2d 166, 53 O.O. 2d 379, 265 N.E. 2d 551, death penalty vacated (1972), 408 U.S. 938.

Other courts have fully recognized that other acts (robberies) are admissible when identity is disputed. Annotation, Admissibility, in Robbery Prosecution, of Evidence of Other Robberies (1955), 42 A.L.R. 2d 854; 1 Weissenberger's Ohio Evidence (1985), Section 404.28; Reed, Admission of Other Criminal Act Evidence After Adoption of the Federal Rules of Evidence (1984), 53 U. Cin. L. Rev. 113, 139.

The probative value of other robberies to prove identity is clearly illustrated in this case. As the trial judge found, all of the seven other robberies occurred from June 18 to October 12, 1984, thus being close in time. All occurred in the general downtown area of Cincinnati. Some were very close. West's Metropolitan Gallery was around the corner from Rensler's Portrait Studio. Appellant only robbed on weekday afternoons except that he robbed Kings News on an early Saturday evening. The places robbed were all first floor, on-the-street, walk-in businesses. In all cases, appellant physically took or attempted to take money from the register, except from Jack West who had no register. Only one or two people appeared to be present. Appellant forced, threw or knocked victims to the floor. The Central Bar aggravated robbery fit exactly that pattern, occurring on August 1, around 2:00 p.m. on a weekday afternoon. The victim was found on the floor, the register open and empty.

There were other individual similarities between these robberies and that at Central Bar. Like the murder victim, Smith and West were both rendered unconscious, with severe head injuries requiring extended hospital stays. Appellant consistently directed violence to a victim's head, as in attacking Smith and West and kicking the Save manager. He pulled Rensler by the hair. At other times, he held a gun to the victim's head, accompanied by threats to kill.

In many crucial respects, the facts of appellant's characteristics, as a robber, directly compare to the known facts concerning the perpetrator of the Gary Mitchell aggravated robbery and murder. These other acts, *i.e.,* robberies, do not simply prove appellant's character; more importantly, they are probative to ascertain appellant's identity as the Central Bar killer.

The trial court also admitted the Acres of Brooks, Metropolitan Gallery and Save robberies as to intent. The evidence as to the victims' head injuries in each of these robberies related to appellant's intent at the Central Bar. See *State* v. *Coleman* (1988), *supra,* at 291, 525 N.E. 2d at 798; *State* v. *Flonnory, supra.* We have also considered appellant's argument that

the trial court improperly excluded some evidence of other robberies after appellant was in custody. We find his argument without merit.

Admissibility is not adversely affected simply because the other robberies differed in some details. The acts remained probative as to identity. The words "like" or "similar" appear neither in R.C. 2945.59 nor in Evid. R. 404(B); *State* v. *Flonnory, supra,* at 126, 60 O.O. 2d at 96, 285 N.E. 2d at 729. Thus, the fact that appellant might, at times, have used a bicycle to escape, as he clearly did at Gold Star Chili, does not require exclusion of non-bicycle robberies. Similarly, this same reasoning applies to the fact that there was no evidence of a gun at the Central Bar, nor at the robberies of Acres of Books and Metropolitan Gallery. But this does not mandate exclusion of later robberies when he displayed a gun. Defense may and did argue all the differences to a jury. Such differences do affect the relative probative value of these events but not their admissibility. The weight to be given to this evidence is for the jury to determine. In the instant case, before evidence of the robberies was introduced and at the close of the case, the trial judge instructed the jury as to the limited purpose of this evidence. Appellant raises no issues about those instructions. Given those instructions, no error is apparent. *State* v. *Flonnory, supra.*

In this case, the state established the probative value of the other-acts evidence by the strong quality of its proof. As the trial judge found, eyewitnesses, fingerprints and other identification established that appellant committed all these robberies. At Gold Star Chili, he was photographed committing the robbery and apprehended soon after. Police found property from three robberies on his person; money from Gold Star Chili, jewelry from Metropolitan Gallery, and a gun from Kings News. Other-acts evidence need be proved only by substantial proof, not proof beyond a reasonable doubt. *State* v. *Carter* (1971), 26 Ohio St. 2d 79, 55 O.O. 2d 130, 269 N.E. 2d 115. Yet, the relative high quality of this other-acts evidence in this case establishes that the prosecution did not attempt to prove one case simply by questionable evidence of other offenses.

## II

In his second proposition of law, appellant argues that the interest of justice was not served when the trial court excluded alibi evidence. He claims further that the prosecution could not have been surprised since he disclaimed any knowledge of the Central Bar robbery.

Before trial, defense counsel refused to furnish a witness list. Counsel confirmed he filed no alibi notice. Appellant said nothing about alibi during the prosecution's case from September 30 through October 8. Appellant's first witness, his girlfriend, Ellen Duncan, then testified, without objection, that she was with appellant until 2:00 p.m. on August 1 and possibly later. The prosecution objected to any further alibi evidence. The defense disclaimed any intention to present alibi evidence. The defense asserted it was only refuting Howell's claim that appellant was with him playing basketball.

The next day, defense counsel stated that he had other witnesses to confirm appellant was with Duncan at her home on August 1. The state again objected. The defense repeatedly disclaimed alibi evidence, rejected any instruction, and explained he did not give notice because the testimony was vague.

The colloquy, in part, was as follows:

"*`* * [Y]ou are not asking the Court to give an alibi instruction, you are not asking the Court to exercise its discretion and allow you at this late time to put on an alibi defense, you are saying we don't want instructions on alibi and we're not putting on an alibi. * * *

"* * *

"* * * [Y]ou definitely don't want an alibi instruction, right?

"Mr. Flax: Right.

"The Court: You are not presenting an alibi, right?

"Mr. Flax: Right.

"The Court: Then don't present one."

Defense counsel presented Duncan's brother. The brother would have testified appellant was with Duncan all day on August 1. Another witness, the brother's girlfriend, would have testified that appellant was at Duncan's house on August 1 until 2:00 p.m. or 3:00 p.m. The trial judge permitted Duncan's brother and his girlfriend to testify before the jury. He did, however, prevent them from testifying about appellant's whereabouts after 1:30 p.m. With this restriction, appellant's counsel asserted, reluctantly, he was prepared to present an alibi defense.

The Ohio Rules of Criminal Procedure require written notice of alibi not less than seven days before trial. Absent notice, a trial court may exclude alibi evidence "unless the court determines that in the interest of justice such evidence should be admitted." Crim. R. 12.1. In *State* v. *Thayer* (1931), 124 Ohio St. 1, 4, 176 N.E. 656, 657, we noted:

"This law [alibi notice requirement] pertains to a very important feature of the criminal law. It gives the state some protection against false and fraudulent claims of alibi often presented by the accused so near the close of the trial as to make it quite impossible for the state to ascertain any facts as to the credibility of the witnesses called by the accused."

To refuse to enforce an alibi notice requirement would be to nullify it. *State* v. *Nooks* (1930), 123 Ohio St. 190, 174 N.E. 743; see, also, *State* v. *Focht* (1974), 37 Ohio St. 2d 173, 66 O.O. 2d 359, 309 N.E. 2d 922. In *State* v. *Smith* (1985), 17 Ohio St. 3d 98, 17 OBR 219, 477 N.E. 2d 1128, we upheld rejection of alibi evidence in an aggravated robbery prosecution. There, counsel's decision not to give notice "was an intended, self-serving trial tactic." *Id.* at 101, 17 OBR at 221, 477 N.E. 2d at 1131. The "prosecution was unaware of the identity of the alibi witness, it had no opportunity or motive to question these witnesses or to investigate the facts, and it would have suffered prejudice by the introduction of alibi testimony." *Id.* at 104, 17 OBR at 223, 477 N.E. 2d at 1134. Nonetheless, the *Smith* court recognized at paragraph two of the syllabus:

"Crim. R. 12.1 should be construed liberally and not be applied where no prejudice would accrue to the prosecution, where there is a demonstrable and excusable showing of mere negligence, or where there is good cause shown."

In some cases, the interest of justice has been served by admission despite lack of timely notice. Where alibi evidence did not surprise or otherwise prejudice the prosecution's case, and the defense acted in good faith, excluding alibi evidence was found to be error. *State* v. *Smith* (1977), 50 Ohio St. 2d 51, 4 O.O. 3d 118, 362 N.E. 2d 988. Where the evidence is objective, exclusion may be unfair. *State* v. *Edwards* (1975), 52 Ohio App. 2d 120, 6 O.O. 3d 91, 368 N.E. 2d 302. The pur-

pose of the Criminal Rules is "the fair, impartial, speedy, and sure administration of justice." R.C. 2901.04(B); Crim. R. 1(B).

However, sound reasons exist for the notice requirement. As the court of appeals stated in *State* v. *Edwards, supra,* at 122, 6 O.O. 3d at 92, 362 N.E. 2d at 304:

"Records are replete with alibi testimony from relatives, girlfriends and bar companions and, as to these, the rule pertaining to prompt notice is based on sound reasoning."

Other states uphold the validity and application of alibi notice requirements. Annotation, Validity and Construction of Statute Requiring Defendant in Criminal Case to Disclose Matter as to Alibi Defense (1972), 45 A.L.R. 3d 958.

In *Williams* v. *Florida* (1970), 399 U.S. 78, the United States Supreme Court, upholding constitutionality, stated at 81-82:

"Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate. Reflecting this interest, notice-of-alibi provisions, dating at least from 1927, are now in existence in a substantial number of States. The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." (Footnotes omitted.)

In this case, appellant's decision not to give alibi notice was a clear tactical decision. Defense counsel wanted the benefit of alibi evidence, that is, to create a doubt, without the burdens of giving notice by supplying witnesses' names and an alibi instruction. Counsel, in fact, largely succeeded. Duncan testified she had been with appellant all day until at least 2:00 p.m. Her brother and his girlfriend corroborated her testimony at least to 1:30 p.m. That testimony was inconsistent with the other facts, a robbery between 1:30 and 2:00 p.m. It conflicted with the testimony of Howell who said he had played basketball with appellant, until noon on the day in question.

This case fits squarely within *State* v. *Smith* (1985), *supra,* where such evidence can be rejected. Appellant offered the evidence only at the eleventh hour, after more than a week of trial and the state had rested. Appellant's excuses for lack of notice were flimsy at best. The testimony was not vague, but certain, contrary to defense representations. Duncan, the first defense witness, had been speaking to appellant during the trial, so she could not have just been discovered as a witness.

The prosecution had no notice of alibi, no opportunity to interview the witnesses, and could have been prejudiced by the tactics of defense counsel as to the alibi issue. *State* v. *Smith* (1985), *supra.* The refusal by the alibi witnesses to give their addresses or Social Security numbers is a further illustration of the evasive nature of this strategy. In sum, appellant displayed bad faith as to the alibi defense. Hence, the trial court did not abuse its discretion since the interest of justice would not require waiver of the alibi-notice requirement based upon the facts of this case.

Even assuming the trial judge abused his discretion in rejecting the evidence, the issue of prejudice remains. The bulk of the defense alibi evidence, appellant's presence elsewhere until 1:30 or 2:00 p.m. on August 1, was admitted. Appellant thus was not prejudiced by any error by the trial court, especially in view of the testimony of his girlfriend. The jury had the opportunity to weigh this evidence.

## III

Appellant, in his third proposition of law, complains that the trial judge did not grant his April 1985 pretrial motion for a polygraph examination. He argues an indigent suffers inequity because a rich defendant could afford to provide himself with a polygraph examination at his own expense. The trial judge granted several other requests for expert assistance but rejected this request for a polygraph examination. Appellant did not raise the issue again or at trial.

The Due Process and Equal Protection Clauses of the Fourteenth Amendment clearly protect indigents prosecuted under state criminal justice systems. *Griffin* v. *Illinois* (1956), 351 U.S. 12, recognized the right to free transcripts when necessary for appeals. *Douglas* v. *California* (1963), 372 U.S. 353, afforded an appellant with the right to appellate defense counsel. *Britt* v. *North Carolina* (1971), 404 U.S. 226, reaffirmed *Griffin.*

Within Ohio, R.C. 2929.024 specifies procedures for indigents in capital cases to secure investigative services and experts. The trial judge is vested with discretion in this area. In exercising their discretion, trial judges must consider: (1) the value of the expert assistance to defendant's proper representation; and, (b) alternative devices to fulfill the same functions. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, paragraph four of the syllabus.

The trial court can not admit the results of a polygraph test into evidence simply at an accused's request. *State* v. *Levert* (1979), 58 Ohio St. 2d 213, 12 O.O. 3d 204, 389 N.E. 2d 848. Such results are admissible only if both the prosecution and defense jointly stipulate that an accused will take a polygraph test and that the results will be admissible. *State* v. *Souel* (1978), 53 Ohio St. 2d 123, 7 O.O. 3d 207, 372 N.E. 2d 1318.

Before expending public funds, the trial court is entitled to have counsel fully explain the necessity for the expenditure. The trial court must determine, in a fully informed judgment, that the services "are reasonably necessary for the proper representation of a defendant." R.C. 2929.024; *State* v. *Esparza* (1988), 39 Ohio St. 3d 8, 529 N.E. 2d 192.

Appellant does not claim that he was going to stipulate to admissibility prior to taking the test. Nor does appellant claim the state would consent to its admission. Instead, appellant argues his trial lawyers needed this information in order to determine whether appellant was telling them the truth.

By denying this cursory pretrial motion, the trial court did not abuse its discretion.

There is no evidence in the record which establishes that the polygraph examination would be of any tangible benefit to the appellant in the defense of this case. Accordingly, appellant's arguments lack merit.

## IV

Appellant, in his fourth proposition of law, asserts fundamental unfairness because he was sentenced to death while Howell received only eight to twenty-five years for aggravated robbery. Howell was never prosecuted for, or convicted of, murder. Appellant argues Howell was equally culpable and that Howell's version alone implicates appellant in killing Gary Mitchell. Appellant urges that this disparity between his and Howell's sentence be corrected by reversing his death sentence.

The state argues correctly that disparity in sentences is not a basis for re-

versal. Also, the state urges appellant waived this alleged error by not raising it at trial. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, death penalty vacated (1978), 438 U.S. 911.

Disparity of sentence does not justify reversal when the sentence is neither illegal nor an abuse of discretion. *State* v. *Jackson* (1977), 50 Ohio St. 2d 253, 4 O.O. 3d 429, 364 N.E. 2d 236, death penalty vacated (1978), 438 U.S. 911; *United States* v. *Smallwood* (C.A. 8, 1971), 443 F. 2d 535. See, also, *Downs* v. *State* (Fla. 1980), 386 So. 2d 788; *United States* v. *Wiley* (C.A. 7, 1960), 278 F. 2d 500; *United States* v. *Daniels* (C.A. 6, 1971), 446 F. 2d 967.

Different treatment of Howell was clearly justified. According to Howell's testimony, appellant suggested the crime, picked the location, fatally injured the bartender, and took the money from the register. Howell, acting only as a lookout, did not participate in the assault or killing, but did share in the money appellant took. Thereafter, Howell confessed to the robbery, testified before the grand jury, pled guilty to aggravated robbery and then testified on behalf of the state . at appellant's trial. Under these facts, there is no merit to appellant's assertion.

### V

Appellant argues he was convicted on evidence insufficient to establish guilt beyond a reasonable doubt. In doing so, he attacks the credibility of his accomplice, Howell, and the quality of the shoe print identification. He also challenges the admissibility and probative value of the other-acts evidence. In response, the state urges the evidence was sufficient to support the jury's verdict.

Appellant's challenge on sufficiency must fail. The jury decided appel-

lant's guilt. The weight to be given evidence and the credibility of witnesses are jury issues. *State* v. *DeHass* (1968), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. "It is the minds of the jurors and not the minds of the judges of an appellate court that are to be convinced." *State* v. *Petro* (1947), 148 Ohio St. 473, 501, 36 O.O. 152, 163, 76 N.E. 2d 355, 369. The test on sufficiency is set forth in *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, syllabus:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

Under that test, ample evidence supported all elements of the offenses. Appellant was implicated in the robbery and murder chiefly by Howell's testimony. The trial judge fully advised the jury to exercise caution in weighing accomplice Howell's testimony.

Appellant did challenge Howell's credibility. Howell had prior felony convictions for forgery and receiving stolen property. Howell displayed some inconsistencies in pretrial statements. Prosecutors promised Howell he would not be tried for murder if he testified before the grand jury and at appellant's trial. According to another jail inmate, Howell said "he was going to get some juice on his case by flipping on Derrick." Yet the jury, knowing these facts, could still choose to accept Howell's testimony.

In addition, there was other evidence which supported Howell's testimony. A bystander described two men in their mid-twenties running in the vicinity of the Central Bar. His description of one fit appellant. Appellant's Pony gym shoe, recovered in October, made a print consistent with the

shoe print found on the Central Bar counter on August 1. The two shoe prints corresponded in both design and dimension. Appellant's shoe could not be excluded as having caused the Central Bar print simply because of the time lapse (August to October) and some wear marks on the shoe recovered in October which were not on the earlier August 1 print. Approximately twenty-five thousand pairs of Pony gym shoes with that design were sold in the greater Cincinnati-Northern Kentucky area. However, that includes all sizes, not just a size that would make the print in question.

Finally, the other-acts evidence, previously discussed, supports appellant's identity and other vital elements of Howell's testimony. Specifically, the other-acts evidence established appellant's particular characteristics in robbing victims in small businesses during afternoon hours, leaping over counters, knocking down or forcing victims to the floor, physically opening registers, taking money from registers, and engaging in violence to victims' heads. The other robberies and the robbery at the Central Bar shared those common characteristics, indicating appellant's scheme, plan or system. They also supported identity of a common perpetrator, appellant. We find sufficient evidence to support the jury's verdict. Appellant's proposition of law is without merit.

## VI

Under R.C. 2929.05(A), we now independently review and weigh the facts and the record as to the death penalty. We consider the offense and offender to determine whether the aggravating circumstance outweighs the mitigating factors. The aggravating circumstance was appellant's role as the principal offender in an aggravated robbery and murder. We find this circumstance established by competent evidence beyond a reasonable doubt.

Against this aggravating circumstance, we find that appellant's history and background reveal some mitigating factors. Appellant's alcoholic father left the family when appellant was five or six and the family had to apply for welfare benefits. Appellant, of low average intelligence (I.Q. 79) and a chronic underachiever, attended special schools. Appellant's friends and relatives, who love him, describe him as a loner, quiet, and non-violent. Appellant's mother, whom he helped care for, described him as easily led.

In the mitigation phase, appellant testified that he used marijuana and cocaine daily which prompted the robberies that he admitted committing. He denied the Central Bar robbery and several of the other robberies.

Under R.C. 2929.04(B), we find little evidence of mitigating factors (1) through (6). The victim did not induce or facilitate the offense, factor (1). Appellant's voluntary drug use does not qualify as duress or coercion, factor (2). While drugs may have caused appellant to rob, drugs did not prompt the murder. There is no evidence of factor (3), mental disease or defect, even though appellant's borderline intelligence can be considered as a mitigating other factor, factor (7). See *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 264, 527 N.E. 2d 844, 856-857. Appellant was only twenty-three at the time of the offense, hence factor (4), age, is minimally significant.

Factor (5), the lack of a criminal record, does not apply. Appellant had prior robbery convictions in 1978 and 1979 and was on parole, for the 1979 offense, when he committed these offenses. Also, he was convicted in separate trials of six of the seven other-acts robberies. Since we find appellant was the principal offender in

the aggravated robbery-murder, factor (6) is not present. As to other factors, factor (7), we find appellant's limited intelligence, deprived childhood, drug habit, and supportive family and friends all relevant.

When considering the nature and circumstances of the offense, we find nothing mitigating. According to Howell, the victim offered no resistance and pleaded for mercy. We, therefore, conclude the trial court and the court of appeals correctly weighed the aggravating circumstance against any mitigating factors.

We find beyond a reasonable doubt that the aggravating circumstance outweighs any mitigating factors.

In conclusion, we find the death sentence appropriate and proportionate when compared with other similar murder cases. See *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 527 N.E. 2d 844; *State* v. *Van Hook* (1988), 39 Ohio St. 3d 256, 530 N.E. 2d 883; *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 530 N.E. 2d 382; *State* v. *Hamblin* (1988), 37 Ohio St. 3d 153, 524 N.E. 2d 476; *State* v. *Post* (1987), 32 Ohio St. 3d 380, 395, 513 N.E. 2d 754, 768, at fn. 10 (cases listed); *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 107, 512 N.E. 2d 598, 610-611 (cases listed). Death sentences were affirmed by this court in all of these cases.

Accordingly, we affirm appellant's convictions and the death sentence. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.