OPINION
On February 19, 1993, the Fairfield County Grand Jury indicted appellant, Guy London, on five counts of rape in violation of R.C.2907.02, one count of sexual battery in violation of R.C. 2907.03(A)(5) and three counts of gross sexual imposition in violation of R.C.2907.05. Said charges arose from incidents involving appellant's stepdaughter. The incidents started when the stepdaughter was approximately twelve years old.
On May 25, 1993, the state moved to amend three of the five counts of rape to attempted rape without force or threat of force. The trial court agreed and so amended the indictment. On same date, appellant pled guilty to the three amended counts, the sexual battery count and the gross sexual imposition counts. A nolle prosequi was entered on the two remaining counts of rape. By entry of sentence filed May 28, 1993, the trial court sentenced appellant to a total aggregate term of twenty-four to forty-five years in prison.
On April 16, 2001, a hearing was held to determine appellant's status pursuant to the Sex Offender Registration Act, R.C. Chapter 2950. By entry filed May 1, 2001, the trial court classified appellant as a "sexual predator."
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ERRED IN FINDING THAT THE STATE HAD MET ITS BURDEN OF PROOF DEMONSTRATING BY CLEAR AND CONVINCING EVIDENCE THAT THE DEFENDANT SHOULD BE CLASSIFIED AS A SEXUAL PREDATOR PURSUANT TO THE PROVISIONS OF 2950.01(E) OF THE REVISED CODE.
 I
Appellant claims the state did not meet its burden of proof in demonstrating by clear and convincing evidence that appellant should be classified as a sexual predator. We disagree.
In State v. Cook (1998), 83 Ohio St.3d 404, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained in C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279. We find this to be the applicable standard as theCook court addressed a similar challenge under a manifest weight standard of review. See, Cook at 426.
R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B)(2) sets forth the relevant factors a trial court is to consider in making its determination:
 (2) In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses, including, but not limited to, all sexual offense;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
During the classification hearing, the trial court took judicial notice of the indictment and the entry of sentence. T. at 4-5. Appellant pled guilty to three counts of attempted rape, one count of sexual battery and three counts of gross sexual imposition involving his stepdaughter. The trial court was presented with the testimony and reports of two psychologists, Bradley A. Hedges, Ph.D and Thomas S. Paulucci, Ph.D. See, State's Exhibit A and Defendant's Exhibit C. The state presented the testimony of Dr. Hedges who opined appellant "does continue to pose substantial risk to safety in the community and that he should, therefore probably be classified as a sexual predator." T. at 20. Dr. Hedges based this opinion upon the following:
 Based on this — what I perceive as a highly habituated history of sexual aggression, kind of a continual inability to establish appropriate boundaries, with increasing levels of disregard for boundary, and then that compounded with the fact that he's essentially not participated in sex offender treatment, has not really addressed his substance abuse history, and has not established a sound relapse prevention plan. So he had a number of risk factors and had not really done much to mediate those risk factors.
T. at 21.
Dr. Hedges noted appellant exhibited some unusual sexual activity and explained the following:
 Okay. Essentially, he admitted to having had some sexual involvement with his step-daughter. His report of that sexual involvement was inconsistent with some collateral information, but the basic gist of it included a range of sexual activity, including oral sex, intercourse, fondling, masturbatory behavior, extending over a pretty protracted period of time. He reports this all occurred post-pubescent for the child. All the collateral material indicates it was likely some this behavior occurred pre-pubescent, but occurred over perhaps up to a five-year period of time.
* * *
 Mr. London kind of described a progressive nature of sexual pathology. He acknowledged the use of erotica early on, that behavior progressing to sexual infidelity with spouse, progressing then into somewhat concurrent sexual activity with his step-daughter while having sex with a number of employees, indicating 20 to 30 of his employees, while he managed a restaurant, and then eventually, intercourse with a prostitute.
T. at 13 and 15.
Appellant's stepdaughter reported that appellant took approximately six pornographic pictures of her. T. at 18. Dr. Hedges opined this signifies a "kind of a continuation of this opportunistic kind of habituated sexual pathology." T. at 18-19. On cross-examination, Dr. Hedges gave his definition of sexual predator as "it's likely to engage in one or more sexual acts in the future." T. at 24.
Appellant presented the testimony of Dr. Paulucci who opined "I don't believe we've established that that's, in fact, the case" in response to the question "do you have an opinion as to whether or not he presents — quote/unquote, is likely to engage in the future on one or more sexually oriented offenses?" He based this opinion upon an assessment of the relative factors set forth in R.C. Chapter 2950. T. at 50. Dr. Paulucci stated "I didn't really feel that he met enough of those to make a prediction that he should be labeled a sexual offender." T. at 50. Dr. Paulucci did not find that appellant "presented with any specific psychopathology." T. at 50.
The trial court also had before it an assessment done by Stop, Inc. at the request of the Fairfield County Probation Department (Defendant's Exhibit B). T. at 82. Said assessment placed appellant in the lowest risk with regard to the possibility or probability of sexual recidivism.
At the conclusion of the hearing, the trial court stated the following:
 In any event, when putting all these characteristics or facts together that were brought to this Court, the history, the background, the relationship of the step-daughter, the continued inappropriate activity — I would submit to the Court in spite of the fact that Dr. Hedges refers to a further sexual inappropriate behavior, that may, in itself, be a more concentrated — or a more narrow definition than the fact that the person is likely to commit another sexually oriented offense.
 And so I'm not concerned the fact that Dr. Hedges used the term `further sexual inappropriate behavior.' Inappropriate behavior could just as easily be referred to or defined as criminal. Criminal activity, certainly, as set out by the Legislature, is a crime against the State, of course. But inappropriate sexual activity would fit into most any definition that the Legislature would come up to as to the activity that may be a crime — or that is suggested to be a crime. So I'm not concerned about that definition.
T. at 91.
Clearly the trial court was presented with conflicting assessments and chose to follow Dr. Hedges's opinion in evaluating the relative factors of R.C. 2950.09(B)(2). The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v.Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. We cannot find the trial court erred in accepting Dr. Hedge's assessment.
Upon review of the record, we find the trial court's conclusion is supported by clear and convincing evidence and is not against the manifest weight of the evidence.
The sole assignment of error is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed.
Hon. Julie A. Edwards, P.J. Hon. Sheila G. Farmer, J. Hon. John F. Boggins, J. concur.