OPINION
On November 13, 1992, appellant, Michel Hanna Aoun, and appellee, Salma Khoury Aoun, were married. On March 18, 1997, appellant filed a complaint for divorce.
A hearing was held on February 27, 1998. By judgment entry filed April 21, 1998, the trial court granted the parties a divorce, and found the termination date of the marriage to be February 27, 1998, the date of the final hearing. Findings of fact and conclusions of law were filed on July 20, 1998.
Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THE DURATION OF THE MARRIAGE AS THE FINAL HEARING DATE.
 I
Appellant claims the trial court erred in determining the termination date of the marriage to be February 27, 1998, the date of the final hearing. We disagree.
Selecting dates for the duration of a marriage rests in the trial court's sound discretion. R.C. 3105.171(A)(2). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
R.C. 3105.171(A)(2) defines "during the marriage" as follows: `During the marriage' means whichever of the following is applicable:
 Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court.
The trial court filed extensive findings addressing its reasons for not choosing an alternative date for the termination of the marriage:
 Husband contends that the marriage ended in June, 1996, when Wife returned to Lebanon to visit her mother, but Husband's contention that Wife abandoned him is unsupported by the evidence. Wife would travel regularly to Lebanon to visit her parents and tend to her pastry business. The trips to Lebanon were important to her because she would visit her family which included her mother, her father, who died in 1994, and her brother and sister-in-law and their children. Wife is very close to her family and the trips helped her maintain the relationships.
 When Wife left in June, 1996, she was to visit for approximately 2 months. Wife contacted Husband in late July, 1996, at the end of her stay and advised that she would be returning one week later so that Husband's sister could travel with Wife. Husband called back and told Wife he did not approve of the one week delay and she should not return to the United States. Husband threatened Wife that if she attempted to return to the United States she would be stopped at immigration. Wife was frightened to return so she waited in Lebanon to hear from Husband.
 Husband never contacted Wife to discuss their marriage and was not interested in reconciliation.
 Wife contacted Husband when she learned he was in Lebanon and arranged to talk to him. Wife scheduled a meeting with Husband and the Rabbi who had married the couple in order to reconcile the marriage. Husband attended, but was critical of Wife and indicated that the marriage could not be reconciled. However, Husband never advised Wife of the pending divorce action and his attempt to serve her by publication.
 Wife returned to the United States in June, 1997, to discuss with Husband the status of the marriage. When Wife arrived she contacted Margo Ames, a family friend, who advised of the pending divorce. Husband saw Margo Ames the day after she talked to Wife. Ms. Ames advised Husband that she had talked to Wife and she was in the United States. Husband disagreed and argued that Wife was in Lebanon. Husband got mad and accused Ms. Ames of lying about Wife's whereabouts and said he had `fixed it' at immigration. Husband called Ms. Ames several times the next day. He continued to deny that Wife was in the United States. He then threatened Ms. Ames that he would report her to the FBI, that he would ruin her reputation, and that she would be sorry. Husband accused Ms. Ames of ruining him financially and that it was all her fault. Husband has failed to show that using the trial date as the ending date of the marriage would be inequitable.
 Husband's contentions, even if true, do not establish any inequity in using the date of final hearing as the ending date of the marriage. First, Husband did nothing to clarify the circumstances and establish that either Wife unilaterally or the parties bilaterally were terminating the marriage in June, 1996. Second, Husband did nothing for 10 months thereafter to terminate the marriage. Third, the only disadvantage in using a later ending date Husband can identify is the passive appreciation of market sensitive assets with which neither party interfered.
 Findings of Fact and Conclusions of Law filed July 20, 1998.
From our examination of the record, we find appellee's yearly trips to Lebanon were customary. T. at 21. Appellant claimed the last time he spoke to appellee was a month after she left for Lebanon in 1996 and at that time she stated "Well, I'm not coming back to this country if you're not going to let me come back again." T. at 23. Appellant claimed "I never seen her again." Id. Contrary to this statement, appellant admitted he saw appellee in 1997 when they tried to resolve some problems. T. at 24.
Appellee testified that when she left for Lebanon in 1996, she intended to return. T. at 100. When she told appellant her stay would be extended by one week, he told her he did not want her anymore, and threatened to inform immigration if she attempted to return. T. at 102. Appellee saw appellant in 1997 in Beirut and attempted a reconciliation. T. at 103. Appellee also returned to the United States in June of 1997 to resolve the problems, but appellant had already filed for divorce. T. at 105-106.
The issue of credibility of witnesses lies within the trial court's discretion. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. We find no abuse of discretion in the trial court's evaluation of the evidence and the credibility of the witnesses.
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Coshocton County, Ohio is hereby affirmed.
By FARMER, J., GWIN, P.J. and EDWARDS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Coshocton County, Ohio is affirmed.