OPINION
Defendant-appellant Richard Freeman appeals his convictions and sentences entered by the Delaware County Court of Common Pleas on one count of breaking and entering, one count of theft, one count of receiving stolen property, and one count of possession of criminal tools, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On June 8, 2001, the Delaware County Grand Jury indicted appellant in Case No. 01-CRI-06-196 on one count of breaking and entering, in violation of R.C. 2911.13(A); one count of theft, in violation of R.C.2913.02(A)(1); one count of possession of criminal tools, in violation of R.C. 2923.24(A); and one count of receiving stolen property, in violation of R.C. 2913.51(A). Subsequently, on June 22, 2001, the Delaware County Grand Jury indicted appellant in Case No. 01-CRI-06-229 on one count of possession of criminal tools, in violation of R.C. 2923.24(A).[1] The trial court consolidated the two cases.
The State filed a motion to admit other acts evidence, requesting the trial court permit testimony of other acts by appellant in order to demonstrate modus operandi and identification pursuant to Evid.R. 404(B) and R.C. 2945.99. Thereafter, appellant filed a motion to suppress. The trial court conducted a hearing on both motions on September 7, 2001.
At the hearing, Officer Chapman of the Columbus Police Department testified relative to the events leading up to his arrest of appellant on May 18, 2001, nine days prior to the offenses involved herein. The officer testified he and Officer Bray were on plain clothes assignment in the Sawmill Road area of Columbus on May 18, 2001, when they observed the front door of Saturday's Haircare smashed out and the glass door front of Nails, Etc. shattered. According to Officer Chapman, the officers approached the front of the hair care shop and noticed a man, who was later identified as appellant, inside the shop, rummaging through cash register drawers. Appellant exited through the back door and walked toward a Chevy Blazer. The officers placed him under arrest.
Officer Chapman conducted a search of appellant, and discovered $1300 in cash and a tire iron. Officer Chapman also found the car keys to the Blazer on appellant's person. The officers ran the vehicle information through LEADS and determined the Blazer was reported as stolen. Officer Chapman testified he also learned the license plates affixed to the Blazer belonged to another vehicle. The officer described appellant's clothing, including a tan jacket, dark ball cap, and jeans. At the close of the hearing, the trial court specifically concluded the other acts evidence was admissible for "purposes of showing scheme or plan and identification."
The matter proceeded to trial before a jury on September 17, 2001. The following facts were adduced at trial.
On May 27, 2001, at approximately 8:30 p.m., Jack and Renee Mougin were driving through a local strip mall to visit a friend, who had recently opened a new store there. The couple drove by the Biltmore Fitness Center. As they drove passed the fitness center, the Mougins observed a man, wearing a tan jacket, blue jeans, a dark ball cap, and glasses, inside the center. The couple also noticed the front door of the facility was shattered. Jack Mougin, realizing something was wrong, drove his vehicle around to get another look. Renee Mougin called 911. During the second drive around, the Mougins did not observe the man in the fitness center. Mr. Mougins parked the car at the edge of the parking lot and waited. Approximately 30 seconds later, the Mougins noticed the man who had been in the Biltmore Fitness Center walk across the parking lot to inspect an antique car which was for sale. The man, realizing the Mougins were watching him, walked around the right side of the building. Thereafter, the Mougins observe the man driving a new gray Mazda out of an adjacent driveway. The Mougins followed the Mazda as it traveled west on Powell Road. Mrs. Mougin read the license plate number to the 911 dispatcher. The dispatcher advised the Mougins to return to the fitness center in order to fill out witness statements.
Chief Mark Bossa of the Shawnee Hills Police Department heard the Powell Police Department's description of the vehicle over his radio. Chief Bossa was in the area and drove to a nearby intersection in an attempt to intercept the Mazda. The chief observed the vehicle and followed it to the intersection of 257 and Blick Road, where the vehicle was stopped at a red light. Chief Bossa positioned his cruiser to block the Mazda. The driver, who was later identified as appellant, exited the vehicle pursuant to Chief Bossa's request and was cooperative with the officer.
Lt. Ron Clark of the Powell Police Department took custody of appellant and transported him to the Biltmore Fitness Center for a show up. Lt. Clark described appellant as a male with a dark ball cap, tan jacket, blue jeans, and grayish brown hair. Lt. Clark found various dollar bills on appellant's person. The Mougins each separately identified appellant. Later than evening, Lt. Clark and Det. Darren Smith interviewed appellant, who initially denied responsibility for the break in and theft, stating he was at the wrong place at the wrong time.
Det. Smith investigated the crime scene and the inside of the Mazda. The detective collected glass samples from the fitness center which were compared to glass fragments found on appellant's clothing and the floor mats of the Mazda. Forensic scientists with BCI compared the samples and determined the glass taken from the fitness center matched trace evidence found on appellant's clothing and shoes. Det. Smith also discovered tire tracks over a grassy median, which followed from the rear parking lot of the strip mall to the adjacent driveway leading to Powell Road. The tire track route was consistent with the Mougins' statements regarding appellant's course onto Powell Road. Additionally, fresh grass was found imbedded in the undercarriage of the Mazda.
The Powell police ultimately discovered the Mazda had been stolen two days earlier from Byers Enterprises, Inc. dba Hertz Rent-A-Car. Richard Metheny, the manager, testified he arrived at work on May 26, 2001, and found the return key lock box had been broken into, and all the keys had been removed. Metheny also testified several cars were missing from the lot. Paul Harrell testified he rented the gray Mazda and returned it during the evening of May 25, 2001, placing the keys in the lock box. Harrell stated there was no glass on the floor of the vehicle when he returned it, and he did not leave any personal belongings in the car. During the investigation, it was also discovered the license plates affixed to the Mazda had been stolen from another vehicle at Byers Enterprises.
Officer Chapman, who testified during the pretrial motions hearing, also testified at trial regarding the May 18th incident.
The trial court included the following instruction in its jury charge:
 Evidence was received about the commission of other crimes other than the offenses which the Defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character. If you find that the evidence of the other crimes is true and the Defendant committed then, you may consider the evidence only for the purpose of deciding whether it proves the identity of the person whom committed the offense in this trial or the Defendant's purpose in committing the offenses, or the Defendant's knowledge of circumstances surrounding the offenses charged.[2]
After hearing all the evidence and deliberations, the jury found appellant guilty of all the pending charges. The trial court sentenced appellant accordingly on September 19, 2001.
It is from these convictions and sentences appellant appeals, raising as his sole assignment of error:
 THE COURT SUB JUDICE ERRED AS A MATTER OF LAW TO THE PREJUDICE OF APPELLANT WHEN IT ADMITTED CHARACTER EVIDENCE IN THE FORM OF A PREVIOUS BREAKING AND ENTERING ALLEGEDLY COMMITTED BY APPELLANT UNDER EXCEPTIONS TO EVID. R. 404(B).
 I
Herein, appellant contends the trial court erred in admitting other acts evidence. We disagree.
The admission or exclusion of evidence lies within the sound discretion of the trial court.[3] In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.[4]
R. C. 2945.59 states:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R. C. 2945.59 and Evid. R. 404(B) are to be strictly construed against the State and the admissibility of "other acts" evidence.[5] However, if the other acts "tend to show" by substantial proof any of those purposes enumerated in Evid. R. 404(B), such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then the evidence of the other acts is admissible for such limited purpose.[6] Although R.C. 2945.59 does not specifically enumerate "identity" as one of the purposes for using other acts evidence, the Ohio Supreme Court has specifically held R.C. 2945.59
includes identity evidence as part of the same plan, system, or method.[7] The other act or acts offered as probative of the matter must themselves be temporally and circumstantially connected to the operative facts of the offense alleged.[8]
Specifically, appellant argues the other acts evidence was inadmissible under the identity exception because the evidence did not demonstrate a unique "behavioral fingerprint" identifiable to appellant.
"A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator."[9] In order for modus operandi evidence to be admissible to establish identity, the other acts must be related to and share common features with the crime in question.[10]
Over objection, the trial court admitted the testimony of Officer Chapman revealing appellant had committed a similar offense on May 18, 2001, which was nine days prior to the commencement of the offenses herein. The evidence at trial also showed both offenses occurred within a five mile radius of the other and each involved a "smash and dash" in a strip mall. Officer Chapman described appellant's dress during the May 18, 2001 incident, and the Mougins described a similar attire during the second incident. Each offense involved the smashing out of a glass front door, and the exiting through a rear door. Further, in both cases, appellant drove a stolen car with stolen plates as his "get-away" vehicle. We find the modus operandi evidence of the May 18th incident provided a behavioral fingerprint unique to appellant; therefore, the trial court did not abuse its discretion in admitting the testimony for identity purposes.
Assuming, arguendo, the trial court erred in admitting such evidence, such error would have been harmless. The trial court provided the jury with a limiting instruction regarding the manner in which they were to consider the evidence. We find appellant would not have been prejudiced by the admission of the other acts evidence as there was more than sufficient testimony from all of the other witnesses to support the jury verdicts.
Appellant's sole assignment of error is overruled.
The judgment of the Delaware County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Edwards, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Because it was determined the possession of criminal tools counts in both indictments were based upon the same activities, the count under Case No. 01-CRI-06-196 was later dismissed.
[2] Tr. at 514.
[3] State v. Sage (1987), 31 Ohio St.3d 173.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
[5] State v. Broom (1988), 40 Ohio St.3d 277, 282.
[6] State v. Flonnory (1972), 31 Ohio St.2d 124, 126.
[7] State v. Jamison (1990). 49 Ohio St.3d 182.
[8] State v. Burson (1974), 38 Ohio St.2d 157; State v. Curry (1975),43 Ohio St.2d 66.
[9] State v. Lowe (1994), 69 Ohio St.3d 527.
[10] Id. at para. 1 of the syllabus.