{¶ 57} I respectfully dissent from the majority opinion with regard to two of appellant's assigned errors. The state had no valid purpose for offering other acts evidence which consisted of post-arrest tape recordings of conversations between Carter and his girlfriend that contained very graphic descriptions of their sexual encounters. Because this evidence served no valid evidentiary purpose and could only have served to inflame the jury, I find that counsel's failure to object to the admission of this evidence constituted ineffective assistance of counsel. I would also find that the omission of the kidnapping *Page 21 
mental element of "knowingly" from count 2 of the indictment did not constitute structural error under State v. Colon, 118 Ohio St.3d 26,2008-Ohio-1624.
 I {¶ 58} After Carter was arrested for attempted kidnapping, the state held him in the county jail. The state offered testimony that while confined, there were 747 attempted calls between Carter and his girlfriend. The state recorded 27 telephone conversations which yielded tape of approximately 8 hours and 16 minutes. During trial, the state played excerpts from these telephone conversations without objection. These recordings contained rather graphic references to past sexual encounters between Carter and the girlfriend. The majority concludes that this constituted valid other acts evidence going to identity under Evid. R. 404(B) and that defense counsel's failure to object to the playing of the tape recordings was a valid trial strategy. I respectfully disagree with both conclusions.
 A {¶ 59} It is unclear what legal basis the court had for admitting tape recordings of telephone conversations made after Carter's arrest on the charges brought in this case. Evid. R. 404(B) allows evidence of other acts of a defendant to show identity, but none of the acts referenced in the recordings even remotely established Carter's identity as the person attempting to commit the kidnapping. *Page 22 
In fact, Carter's identity as the person in the car was not a serious issue at trial in light of the eyewitness identification of Carter as the person driving the car and the girlfriend's admission to the police that Carter had been driving her car and that the items found in the car belonged to her. At all events, the case as tried was grounded on the issue of whether Carter attempted to force the victim into his car against her will — not whether he was actually the person driving the car.
 {¶ 60} In State v. Jamison (1990), 49 Ohio St.3d 182, 184, the supreme court noted that it was a longstanding principle of the law that "an accused cannot be convicted of one crime by proving he committed other crimes or is a bad person." As noted, the conversations between Carter and his girlfriend were very sexually graphic in nature. For example, at one point during the conversations, Carter asked the girlfriend to wipe her genitals with a piece of paper and mail the paper to him in jail so that he could smell it. Other aspects of the conversation recounted Carter's fantasies for future sexual encounters with the girlfriend. Although these conversations were carried out between two consenting adults, the content of the conversations could have been repugnant to members of the jury or at least shocking to their sensibilities. Given the lack of any relevancy to the underlying charges, the state's use of these conversations *Page 23 
could only have been for the purpose of showing that Carter's sexual proclivities made him a bad or deviant person.
 {¶ 61} There is some suggestion that the state used the tape recordings on cross-examination to impeach the girlfriend's testimony when she denied having telephone conversations of a sexual nature. The girlfriend's dishonesty or modesty in denying the nature of the adult content in her conversations with Carter does not suggest that she was otherwise lying about owning the items found in the car. In fact, there is nothing in the tape recordings to contradict her claimed ownership of the items found in the car. Bringing out the sexual acts spoken of in the telephone conversations served only to suggest that Carter was a sexual deviant who was capable of abducting and abusing a young girl.
 B {¶ 62} Defense counsel's failure to object to the playing of these tape recordings was a violation of his essential duties to Carter. Even if there was a colorable question concerning the state's use of certain portions of the tape recordings for impeachment of the girlfriend, competent counsel would not have allowed the tape recordings to be played in their entirety.
 {¶ 63} I also part company with the majority on its conclusion that trial counsel's decision not to object to the admission of the taped telephone conversations was a matter of trial strategy. Too often, the appellate courts *Page 24 
appear to sanction as matters of "strategy" blatant errors by trial counsel. Trial strategy should assist the defense, not hurt it. On the facts of this case, I can conceive of no viable trial strategy that would cause trial counsel to knowingly waive an objection to inadmissible evidence. There is nothing in the record to show that, as a matter of strategy, the admission of the tape recordings somehow benefitted Carter's defense. Carter was charged with a sexual motivation specification. Counsel's decision not to object and allow into evidence tape recordings detailing Carter's libertine sexual practices could not possibly have promoted the goal of acquitting Carter. The failure to object was a violation of counsel's essential duties.
 {¶ 64} Finally, I conclude that the outcome of trial may have been different had the offending evidence been barred from trial. The state did not have compelling evidence to show that Carter attempted to remove the victim from the bus stop or restrain her liberty in order to terrorize, inflict serious physical harm or to engage in sexual activity on her. He did not remove her from the bus stop, nor did he make any overt threats to remove her. At trial, the state argued that the handcuffs, rope, knife, and stockings found in the car Carter had been driving showed his intent to commit a sexually-oriented offense. The tape recordings of conversations occurring after the incident were wholly irrelevant to his intent to commit a kidnapping, yet the state's presentation of the tape *Page 25 
recordings allowed the jury to infer that Carter's post-offense conduct could be used as proof of the underlying charges.
 II {¶ 65} Count 2 charged Carter under R.C. 2905.05.01(B)(1), which states that no person in dealing with a victim under the age of 13, shall "knowingly" remove another from the place where the other person is found. The state concedes that the indictment omitted the mental element of "knowingly" and appears to concede that the conviction should be vacated.
 {¶ 66} The state's concession is ill-advised. In State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I"), the supreme court found an indictment for robbery in violation of R.C. 2911.01(A)(2) to be defective because it failed to include the "reckless" mental element for robbery. The supreme court held that the omission of the reckless mental element was structural error because errors stemming from that omission permeated the trial to the point where the trial court could not "reliably serve its function as a vehicle for determination of guilt or innocence[.]" Id. at ¶ 44.
 {¶ 67} Upon reconsideration of Colon I, the supreme court stressed that the structural error resulted not only from the omission of the mental element from the indictment, but from several trial errors that were "inextricably linked to the flawed indictment." State v.Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, at ¶ 7 *Page 26 
("Colon II "). This cumulative error consisted of there being no evidence that the state argued that the defendant's conduct was reckless, the trial court's failure to include recklessness as an element of the crime when it instructed the jury, and the state's treatment, in closing argument, of robbery as a strict-liability offense. Id. at ¶ 6.
 {¶ 68} In this case, the state did offer evidence that Carter acted knowingly by virtue of the implements for binding or restraining a person and his possession of a knife. During closing argument to the jury, the state referenced these "implements" with regard to count 1, and stated "[a]nd as is explained, the implements that we have here certainly subjected her to that substantial risk of harm." This argument certainly applied with equal force to count 2, which likewise contained "substantial risk of serious physical harm" language. Finally, the jury instructions clearly stated the "knowingly" mental element to the jury. The court instructed the jury that, "[b]efore you can find the defendant guilty of attempted kidnapping under Count 2, you must find beyond a reasonable doubt that * * * the defendant knowingly engaged in conduct which, if successful, would have resulted in the commission of the offense of kidnapping * * *." The court went on to instruct the jury that "kidnapping * * * means to knowingly remove a person by any means * * *." *Page 27 
 {¶ 69} Because the evidence showed, the state argued, and the court instructed on the "knowingly" mental element, Carter has not established the same kind of "unique" facts that led to structural error underColon. *Page 1