OPINION
{¶ 1} On September 20, 2001, the Stark County Grand Jury indicted appellant, Mark Brumbaugh, on two counts of theft in violation of R.C.2913.02, two counts of forgery in violation of R.C. 2913.31 and one count of unauthorized use of a motor vehicle in violation of R.C. 2913.03. Said charges arose from appellant's use of checks and an automobile belonging to one Julie Hunter.
{¶ 2} A jury trial commenced on November 7, 2001. The jury found appellant guilty of one theft count and one forgery count. The jury found appellant not guilty of the remaining counts. By judgment entry filed November 16, 2001, the trial court sentenced appellant to a total aggregate term of eight months in prison.
{¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I. {¶ 4} "THERE WAS INSUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY OF THEFT AND FORGERY AND HIS CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I
{¶ 5} Appellant claims his conviction for theft and forgery were against the manifest weight of the evidence. We disagree.
{¶ 6} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
{¶ 7} Appellant was convicted of theft pursuant to R.C.2913.02(A)(1) which states as follows:
 {¶ 8} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 9} "(1) Without the consent of the owner or person authorized to give consent;"
{¶ 10} The offense was a felony of the fifth degree [R.C.2913.71(B)]:
 {¶ 11} "Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is any of the following:
 {¶ 12} "(B) A printed form for a check or other negotiable instrument, that on its face identifies the drawer or maker for whose use it is designed or identifies the account on which it is to be drawn, and that has not been executed by the drawer or maker or on which the amount is blank;"
{¶ 13} Appellant was also convicted of forgery pursuant to R.C. 2913.31(A)(3) which states as follows:
 {¶ 14} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 15} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
{¶ 16} Appellant claims the testimony of the victim, Julie Hunter, was insufficient, unreliable and contradictory from prior testimony. Appellant also claims other witnesses corroborated the fact that his acts were innocent in nature and not without Ms. Hunter's permission.
{¶ 17} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison
(1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
{¶ 18} Ms. Hunter testified that although she had previously given appellant permission to drive her vehicle, she did not do so on the evening in question. T. at 80, 90. Upon inspection of her vehicle, Ms. Hunter discovered eleven checks missing from her checkbook which was inside the glove compartment. T. at 92. Ms. Hunter testified that on two previous occasions, she permitted appellant to purchase groceries for her and gave him signed checks with the amounts blank.[1] T. at 84-86. However, Ms. Hunter denied giving appellant the checks cashed by him on the evening in question. T. at 93, 100-101. Ms. Hunter stopped payment on the eleven checks and reported them stolen. T. at 92-93. Of the two checks that were negotiated without her permission, one of them contained her signature as she had signed one in blank while she was paying bills. T. at 95-96. Ms. Hunter left the signed check in her checkbook because she was distracted by her children. T. at 96. She never wrote the amount or payor on the check. T. at 96. The second check did not contain her signature nor her writing. T. at 97-98.
{¶ 19} Appellant points out that at the preliminary hearing, Ms. Hunter denied lending him her vehicle in the past. T. at 103-104. When confronted about it on cross-examination, she claimed she had forgotten the incidents because "[i]t happened awhile ago." T. at 104. It was also brought out on cross-examination that Ms. Hunter gave two different times for appellant's arrival at her house, 11:45 p.m. via her direct testimony and 12:30 a.m. via her statement to police. T. at 81, 105-106. Ms. Hunter admitted she had had a conversation with appellant part of which she could not remember. T. at 108-109. She admitted it was possible that she could have given appellant permission to cash the checks. T. at 109.
{¶ 20} The circumstances surrounding the negotiation of the checks refute the implication the checks were passed with permission. In each incident, the checks were for a small amount of merchandise and a large return of cash. T. at 142, 156. One tape actually shows appellant writing the check. T. at 100, 159. The checks were passed at different Giant Eagle locations some ten miles apart in the early morning hours. T. at 140, 143, 150, 153, 156.
{¶ 21} We find the surreptitious method of cashing the checks at different stores some ten miles apart substantiates Ms. Hunter's testimony that these checks were taken and tendered without her permission. The minimal inconsistencies in Ms. Hunter's statements were easily explained and could have been easily accepted by the jury.
{¶ 22} We cannot find, given Ms. Hunter's undisputed testimony that appellant did not have her permission to cash the checks, that the jury lost its way. We find no manifest miscarriage of justice.
{¶ 23} The sole assignment of error is denied.
{¶ 24} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By FARMER, P.J. WISE, J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
[1] Ms. Hunter confronted appellant about inflated amounts on these previous checks and appellant promised to repay her. T. at 87-88.