OPINION
Appellants, Marcos Sebastian Miguel and Guadalupe Francisco, illegal residents of Tennessee, were arrested in New Philadelphia, Ohio by federal authorities for selling immigration documents. At the time of their arrest, appellants had with them a son, Andrés Francisco Sebastian Miguel, born September 28, 1999. As a result of the arrest, Andrés was placed into the custody of appellee, Tuscarawas County Job Family Services. (Case No. 00JN00039). An adjudicatory hearing was held on March 2, 2000. By judgment entry filed March 3, 2000, the trial court found Andrés to be dependent. A dispositional hearing was held on March 30, 2000. By judgment filed March 31, 2000, the trial court continued the temporary custody with appellee.
On July 24, 2000, appellee filed a complaint for the temporary custody of another son, Gasper Francisco Sebastian, born October 26, 1996, alleging the child to be neglected and dependent (Case No. 00JN00558). An adjudicatory hearing before a magistrate was held on August 21 and 22, 2000. By decision filed August 28, 2000, the magistrate found Gasper to be neglected and dependent. The parents filed objections on September 8, 2000. A hearing was held on December 28, 2000. By judgment entry filed January 22, 2001, the trial court overruled the objections and approved and adopted the magistrate's decision.
On February 5, 2001, the parents filed a motion for relative placement of the children with the maternal grandparents, Andrés Francisco Gaspar and Anjelina Francisco Felipe, residents of Barillas, Huehuetenango, Guatemala. Parents alleged the children could return to Guatemala with mother when she returns to said country on March 9, 2001 due to deportation proceedings. A hearing was held on February 20, 2001. By judgment entry filed March 5, 2001, the trial court placed the children in the grandparents' legal custody and terminated the matter.
On June 8, 2001, appellee filed a motion to review the dispositional order given the fact that mother did not return to Guatemala as planned. A hearing was held on June 15, 2001. By judgment entry filed June 19, 2001, the trial court suspended the March 5, 2001 order until an additional hearing could be had. Said hearing was held on June 22, 2001. By judgment entry filed July 6, 2001, the trial court found the delay in transporting the children to Guatemala to be a substantial change in circumstances requiring re-evaluation of the March 5, 2001 order. The trial court suspended the order and placed the children in appellee's temporary custody.
Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT ERRED IN VACATING ITS PRIOR ORDER OF LEGAL CUSTODY TO THE GRANDFATHER AS THE RECORD DOES NOT ESTABLISH EVIDENCE OF A CHANGE IN CIRCUMSTANCES OF THE CHILD OR CUSTODIAN JUSTIFYING THE CHANGE.
 II. THE TRIAL COURT ERRED IN VACATING THE LEGAL ORDER OF CUSTODY TO THE MATERNAL GRANDFATHER WITHOUT FIRST SERVING THAT GRANDFATHER WITH A SUMMONS SO THAT THE COURT WOULD HAVE PERSONAL JURISDICTION OVER HIM.
 I
Appellants claim the trial court erred in vacating its previous order of custody without clear and convincing evidence that there had been a change of circumstances.
By judgment entry filed July 6, 2001, the trial court found there was a change of circumstances because mother did not obey the intent of the March 5, 2001 order and return to Guatemala so that the maternal grandparents could assume custody. The trial court also found the household conditions of the grandparents in Guatemala were misrepresented at the February 20, 2001 hearing. The trial court found mother asked various people for items (appliances, TV, VCR) and indicated the children would be living in poverty. In the alternative, mother purposefully lied to the foster parents in order to extort material gain and also misrepresented conditions to appellee.
Appellants argue mother did not thwart her deportation to Guatemala, and she was not responsible for transporting the children to Guatemala as Tuscarawas County should have done the transporting. In this argument, appellants conveniently forget it was their own motion for relative placement filed February 5, 2001 that initiated the concept of transportation:
 The parents note that transportation might be provided free of charge, if this Court consents, by the Immigration and Naturalization Service in conjunction with the mother's deportation. See the July 6, 2000, fax from INS Special Agent Tirey, filed with the parents' supplemental memorandum in Case No. 00JN00039 on or about July 11, 2000.
Parents' counsel also argued to the trial court that free transportation was imminent. February 20, 2001 T. at 4-5; Letter from Mr. Renner filed February 12, 2001 in Case No. 00JN00558. Same counsel indicated the maternal grandparents were affluent. February 20, 2001 T.
at 6. The agreement for maternal grandparent placement was predicated on the argument that it would be in the best interest of their children to be raised in their own native language, culture and custom. The children's three older siblings were being raised by the grandparents. Appellee's counsel and the guardian ad litem did not oppose the motion because of appellee's desire for relative placement and the fact that it soon would be time to move on the issue of permanent custody. Id. at 9-10, 13.
Based upon all this information, the trial court granted legal custody of the children to the maternal grandparents in Guatemala. See, Judgment Entry filed March 5, 2001. With this act, the trial court justifiably assumed the grandparents had custody of the children. On June 5, 2001, appellee informed the trial court that mother had fought extradition to Guatemala and the children remained in foster placement in Tuscarawas County. The trial court was also informed of the fact that mother was soliciting from various people the aforementioned gifts for the children's benefit when they returned to Guatemala. Mother also stated the children would return to the United States at age seven to get the benefits of an American education.
Under our standard of review, a decision on conflicting testimony is best decided by the trial court. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. In this matter, the issue of whether mother lied via her counsel at the February 20, 2001 hearing or lied to the foster parents or lied at the June 22, 2001 hearing was up to the trial court. In its judgment entry filed July 6, 2001, the trial court accepted mother's description of the living conditions for the children in Guatemala as "living in poverty, eating beans and rice, and bathing in the river" to be the truth. We cannot fault this conclusion. Also, there can be no dispute that the assurance of imminent transport to Guatemala was not fulfilled for whatever motive.
Although the gravamen of this assignment of error is whether these facts are sufficient to create a change of circumstances, we find, consistent with our decision in Assignment of Error II, that only the emergency order of June 19, 2001 was appropriate given the lack of assumption of custody by the grandparents.
Therefore, we find the trial court was correct in its order of June 19, 2001, but premature in ruling without notice to the maternal grandparents, the legal custodians.
Assignment of Error I is granted in part.
 II
Appellants claim the trial court erred in not notifying the maternal grandparents, the legal custodians, of the motion and hearing on change of circumstances. We agree.
We note the trial court retained jurisdiction over the children because the motion was filed within a year from the initial complaint. We further note the children remained in the personal jurisdiction of the trial court.
Pursuant to Juv.R. 2(Z), a "party" is defined as "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court." Pursuant to Juv.R. 20, all motions are to be served "upon each of the parties."
The question is whether the grandparents became "parties" by the language of March 5, 2001 order. We answer this question in the affirmative for the following reasons.
Primarily, the judgment entry of March 5, 2001 placed "legal custody" in the maternal grandparents, Andrés Francisco Gaspar and Anguilina Francisco Filipe, and the matter was "terminated." Although the record is devoid of any appearance by said grandparents, we find by the authority of the March 5, 2001 entry, they became "parties" under the definition of the juvenile rules.
The term "legal custody" is defined by Juv.R. 2(V) as follows:
 `Legal custody' means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court.
Based upon these definitions and the philosophy for the interpretation of the Juvenile Rules,[1] we find the maternal grandparents should have been notified pursuant to Juv.R. 16(A) and Civ.R. 4 et seq.
Assignment of Error II is granted.
The judgment of the Court of Common Pleas of Tuscarawas, Ohio, Juvenile Division is hereby reversed and remanded for service and hearing on bests interests of the children.
By Farmer, J., Hoffman, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby reversed and remanded for service and hearing on bests interests of the children.
[1] Juv.R. 1(B)(1).