OPINION
{¶ 1} On March 23, 2001, Old Reliable Wholesale Inc. filed acomplaint in the Court of Common Pleas of Summit County againstappellant, Tom Weaver dba Tom Weaver Construction Company seeking paymentdue and owing for kitchen cabinets on a construction project. Theconstruction project was a new home for appellees, William and KateStanley.
 {¶ 2} On May 9, 2001, appellant filed an answer and a third-partycomplaint against appellees for money due and owing for "extras."Appellant also filed a change of venue to Stark County which was granted.On August 8, 2001, appellees filed an answer and a counterclaim againstappellant for damages due to numerous defects in the home.
 {¶ 3} On October 12, 2001, the case was heard in mediation. OldReliable and appellant settled their claims. The matter between appellantand appellees proceeded to a bench trial on May 3, 2002. By judgmententry filed July 19, 2002, the trial court found in favor of appellees inthe amount of $8,410.00, and ordered appellant to make certain repairs orpay an additional $3,000.00.
 {¶ 4} Appellant filed an appeal and this matter is now before thiscourt for consideration. Assignments of error are as follows:
 I {¶ 5} "The court's award of damages for the basement fireplacewas an abuse of discretion and contrary to law."
 II {¶ 6} "The court erred in awarding damages and ordering repairswhere there is no competent or credible evidence that the appellant wasever notified of the alleged defects within the warranty period."
 III {¶ 7} "The trial court's finding that there did not exist anenforceable contract regarding change orders was an abuse ofdiscretion."
 IV {¶ 8} "The court's delay in rendering its opinion is an abuse ofdiscretion."
 {¶ 9} Appellees also filed an appeal and their cross-assignmentof error is as follows:
 Cross-assignment of error I {¶ 10} "The trial court erred in reducing the appellees' award ofdamages for reasonable repairs to the basement fireplace of theirresidence, in light of the uncontroverted evidence of such repaircost."
 I, II, Cross-assignment of error I {¶ 11} Appellant claims the award of damages for a basementfireplace and other repairs was not supported by the evidence presented.Appellees claim the trial court erred in reducing the award as to thefireplace.
 A judgment supported by some competent, credible evidence will not bereversed by a reviewing court as against the manifest weight of theevidence. C.E. Morris Co. v. Foley Construction Co.(1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment forthat of the trial court where there exists some competent and credibleevidence supporting the judgment rendered by the trial court. Myers v.Garson, 66 Ohio St.3d 610, 1993-Ohio-9. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 Basement Fireplace {¶ 12} In its judgment entry of July 19, 2002, the trial court found the following as to the fireplace:
 {¶ 13} "I have reviewed Plaintiff's Exhibits 8 — 14, Defense Exhibits M, N, O, P, Q, S, T, II, FF, GG, and the testimony of Ferguson (T-141-181) and Wood (T-280-308). I find the Exhibits, coupled with Ferguson's testimony, to be more credible, and I find that the basement fireplace was not constructed with the appropriate vents, the appropriate angles or the appropriate material, and therefore, not performed in a workmanlike manner.
 {¶ 14} "I find Stanley knew of this defect in 1996 and 1997 and should have corrected the defect then, but did not. I will, therefore, reduce the 2001 and 2002 estimated costs of repair (which averages out to $8,700.00 (Defense Exhibits Q and S)) by fifty percent, and award $4,350.00 as a reasonable costs of repair."
 {¶ 15} The initial complaint on the fireplace was that it did not draft properly. T. at 145. Jim Ferguson, a fireplace and chimney construction expert called by appellee, testified he attempted to light a fire without first preheating the flue and then again after preheating the flue and during both tests, the draw (smoke going up the fireplace) was inadequate. T. at 149-151. Mr. Ferguson opined the fireplace was not built in a workmanlike manner:
 {¶ 16} "The lintel bar is a — is, is basically a piece of angle iron that goes across the front opening of the fireplace so that the, the bearing weight above that area can be supported. Um, that lintel bar was put in with the, with the angle facing into the fireplace. Um, it interfered with the, with the operation of the damper so the — whoever worked on this fireplace actually cut a V into that bar in order to make room for the damper lever to work, um, which that removed the strength from that lintel bar as, as far as, as far as, supporting any structure and, um, obviously made it very difficult for anybody to be able to use the damper." T. at 154-155.
 {¶ 17} Mr. Ferguson also opined the flue had multiple offsets which were against code, the offset coming down from the top of the chimney was greatly reduced, the outside air louver should have its own access to the outside instead of going through the ashpit, the outside air vent was inadequate, there was no lintel bar to support the masonry front and the back wall of the fireplace is corbelled (not flat). T. at 153-154, 156-161. The two main problems for the inadequate draft are the multiple offsets and the corbelled back wall. T. at 161.
 {¶ 18} Appellant's expert and the person who built the fireplace, Wayne Wood, testified the fireplace was "constructed the way that it should have been constructed." T. at 283. He admitted "it had some problems that shouldn't have been there. I went through a lot of pains to put in things that would make the fireplace work better that had been disregarded and destroyed." T. at 283-284. Mr. Wood tested the fireplace and found it would draw properly. T. at 286-287. He claimed the masonry vents he installed from the outside to the inside were covered by stone. T. at 287-288. He opined the covering of the vents with the stone by a third party cut down the efficiency of the chimney, and the ash dump was completely full contributing to the improper draw. T. at 288-291. Mr. Wood stated the work needed to correct the covered vents was minimal and the ash door had to be cleaned out and open for an efficient draw. T. at 291-292. When cross-examined using photographs taken during construction, Exhibits FF, GG and II, Mr. Wood was unable to locate the vents. T. at 303-306.
 {¶ 19} The trial court was faced with two contradicting opinions. The fact that the trial court found Mr. Ferguson more credible than Mr. Wood is clearly within the trial court's prerogative. Mr. Wood only installed the basement fireplace and some of the error was in the flue course throughout the home.
 Damages for fireplace {¶ 20} As cited supra, the trial court averaged the estimated costs of repair and discounted the price because of appellees' failure to timely complain about the problem.
 {¶ 21} Mr. Wood opined the cost to repair the fireplace would be $200 plus the cost of a door for the ash vent (two or three dollars). T. at 292-293. Mr. Ferguson testified he prepared two repair estimates one-half year apart, the first one for $7,624.40 and the second for $9,815.50, a difference of $2,191.10. See, Defendant's Exhibits S and Q. The trial court averaged these costs and reduced the amount by fifty percent, finding appellees to have had the enjoyment of the fireplace and having been dilatory in complaining.
Although the trial court's averaging of the repair estimates was King Solomanesque, we find such a finding not to be an abuse of discretion. By discounting and averaging, the trial court allowed for inflation within the higher estimate, Defendant's Exhibit Q.
 {¶ 22} Appellees on cross-appeal argue the damages should not have been discounted. As noted supra, we fail to find an abuse of discretion.
 {¶ 23} Appellant also claims the damages awarded on the basement fireplace were unlawful because the claim was made beyond the one year general warranty. In his answer to appellees' counterclaim, appellant did not raise this defense. Defendant's Exhibit F, a letter from appellees' counsel containing a listing of defects, was admitted at trial. Appellant argues this letter should not have been admitted because it discussed settlement negotiations and therefore violated Evid.R. 408. Although such is the law, the matter was tried to the court and appellant cannot demonstrate any prejudice on the issue. The contract was entered into on March 6, 1996 and the letter requesting repair is dated December 5, 1997. See, Plaintiff's Exhibit 1 and Defendant's Exhibit F. Although the home was not complete, appellees took possession in the beginning of December, 1996. T. at 71. The year warranty period was not breached.
 {¶ 24} Assignments of Error I and II are denied. Cross-Assignment of Error I is denied.
 III {¶ 25} Appellant claims the trial court erred in finding there was no enforceable contract for the charging for change orders. We disagree.
 {¶ 26} In its judgment entry of July 19, 2002 at paragraph five, the trial court stated the following:
"There is not other written document evidencing any other agreement outside Exhibit 1 and Exhibit 3 (T-96). The proposal under Exhibit 1 provides that any alteration or deviation from the specifications will be executed only upon customer's orders and will become an extra charge over and above the estimate. There is nothing in the proposal which dictates whether the order is to be verbal or written. There is testimony by Weaver that he and Stanley had a verbal agreement that if the cost of a particular job set out in Exhibit 3 exceeded the estimated amount or if Stanley requested a change order, then Stanley would be responsible for the added cost. (T-55, 59, 61). There is evidence that Stanley assented to pay the excess for certain change orders, but only a limited number of those. (Exhibit 2; T-222-T249)."
 {¶ 27} Appellees paid $5,000 for extras when the home was completed. The contract provided the following regarding this issue:
 {¶ 28} "* * * Any alteration or deviation from above specifications involving extra costs will be executed only upon customer's orders, and will become an extra charge over and above the estimate. * * *" See, Plaintiff's Exhibit 1.
Plaintiff's Exhibit 3 is a detailed line-by-line analysis of the cost and suppliers, prepared for the financing institution. Plaintiff's Exhibit 2 is a packet of sixteen pages of extras appellant claims were done at appellees' order. Appellant admitted "we were going to not worry about everything [extras] until at the time of completion and then we would just settle up." T. at 50. Appellant believed appellees understood there would be additional costs for changes because they gave him an extra $5,000. T. at 53. Appellant admitted change costs were never discussed or presented. T. at 56. Some days, appellees purchased the raw materials. T. at 58. Appellant testified to a litany of changes, but conceded their cost and payment were never discussed. Appellant gave appellees the itemized bills for the change orders in January of 1997. T. at 75-76; Plaintiff's Exhibits 2 and 5.
 {¶ 29} As the evidence suggests, the trial court's conclusion is correct. There was no provision for extras as to costs, payment or credits. The parties never formulated any plan on the extras. Plaintiff's Exhibit 2 is a compilation of the costs from the original supplier invoices which were not in evidence.
 {¶ 30} Apart from the lack of any enforceable provision in the contract, appellant does not enumerate the actual costs for the changes, i.e., two feet to family room, ramps for den, extra windows and skylights. The trial court concluded that apart from the $5,000 paid by appellees and the amount on the cabinets to the original plaintiff sub judice, appellant had failed to prove the costs of the extras.
 {¶ 31} Given the vague and general nature of the evidence, we cannot say the trial court erred in its assessment of the quality of the evidence.
 {¶ 32} Assignment of Error III is denied.
 IV {¶ 33} Appellant claims the judgment should be reversed because it took the trial court two and one-half months to enter an opinion. We disagree.
At the outset, it is important to note that apart from rulings on motions, the Rules of Superintendence do not set a time limit for decisions. Further, it is obvious from the judgment entry the trial court had the transcript prepared in order to rule. The transcript is over three hundred pages and there are numerous exhibits. We do not find any error in the two and one-half months time frame for entering the decision nor can any prejudice be shown.
 {¶ 34} Assignment of Error IV is denied.
 {¶ 35} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, P.J. and Boggins, J. concur.
Edwards, J., concurs in part and dissents in part.