OPINION *Page 2 
{¶ 1} Amanda Matheny is the mother of four children: Chad Dunn born October 28, 2001, Jason Durbin, Jr. born December 12, 2002, Logan Winters born September 21, 2004, and Russell Winters born December 26, 2006. Father of Chad is Travis McFeeders. Father of Jason is Jason Durbin, Sr. Father of Logan and Russell is appellant, Sean Winters. Ms. Matheny and appellant are married.
 {¶ 2} On October 26, 2006, appellee, the Tuscarawas County Job and Family Services, filed a complaint alleging Chad, Jason, and Logan to be neglected and dependent (Case No. 2006JN00559). On November 21, 2006, a stipulation was made as to dependency. On November 27, 2006, the trial court placed the children in appellee's temporary custody.
 {¶ 3} On December 26, 2006, Ms. Matheny gave birth to Russell. On December 28, 2006, appellee filed a complaint alleging Russell to be dependent (Case No. 2006JN00668). By judgment entry filed January 25, 2007, the trial court found Russell to be dependent.
 {¶ 4} On September 5, 2007, appellee filed a motion to modify prior dispositions, requesting permanent custody of all four children. Hearings were held on January 10 and 25, 2008. By judgment entries filed February 22, 2008, the trial court granted permanent custody of the children to appellee.
 {¶ 5} Appellant filed an appeal and this matter is now before this case for consideration. Assignment of error is as follows: *Page 3 
 I {¶ 6} "THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILD COULD NOT AND SHOULD NOT BE PLACED WITH THE APPELLANT AND THAT IT WAS IN THE MINOR CHILD'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF TUSCARAWAS COUNTY JOB AND FAMILY SERVICES."
 I {¶ 7} Appellant claims the trial court's decision to grant permanent custody of Logan to appellee was not supported by clear and convincing evidence. We disagree.
 {¶ 8} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 9} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 10} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to *Page 4 
division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 11} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 12} "(16) Any other factor the court considers relevant."
 {¶ 13} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 14} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; *Page 5 
 {¶ 15} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 16} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 17} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 18} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 19} In appellee's motion to modify prior dispositions and request for permanent custody filed September 5, 2007, appellee set forth the following reasons for its motion:
 {¶ 20} "Chad Dunn, Jason Durbin Jr., and Logan Winters were placed in the temporary custody of Job and Family Services on November 22, 2006. Russell Winters was placed in the agency's custody immediately after his birth on December 27, 2006. The children have remained in the temporary custody of the agency since that time. Sean Winters and Amanda Matheny, the parents from whom the children were removed, have engaged in some case plan services but have failed to make any significant changes which would demonstrate their ability to provide care for the children. The residence of Mr. Winters and Ms. Matheny has been maintained. They have completed two parenting classes and have undergone psychological evaluations. *Page 6 
Their psychological evaluations recommended ongoing counseling which Mr. Winters and Ms. Matheny are now only beginning. Significant problems developed during visitations with their children when they were in the home of Mr. Winters and Ms. Matheny. It is apparent to all those supervising these visitations that they are simply unwilling or unable to provide appropriate care for their children. They appear unable to provide for the children's basic needs and, despite continual redirection attempts by agency personnel and personnel from Personal and Family Counseling Services, Mr. Winters and Ms. Matheny have failed to make any change in their ability to parent the children. Further issues developed during their visitations regarding their inability to meet the children's needs by having food available and their stated inability to visit with the children individually, let alone be able to provide appropriate care for them individually."
 {¶ 21} As to appellant, the trial court specifically concluded the following:
 {¶ 22} "In summary, this case involves four children born to one mother and three fathers. One father is serving a significant prison sentence and is not available to parent these children. Neither Travis McFeeders nor Jason Durbin, Sr. have made any significant progress on case plan services. Mr. Winters is now married to the mother of these children. He has a history of Domestic Violence. The children have reported that they have been repeatedly beaten by Mr. Winters. Neither Mr. Winters nor Ms. Matheny has made significant progress in counseling. They have been slow to complete case plan services. There is no evidence that Mr. Winters and Ms. Matheny have acknowledged the issues of violence and neglect in their family let alone rectified them. Ultimately, the evidence of TCJFS is largely uncontradicted in that the totality of *Page 7 
the evidence leaves us with the picture of parents who can parrot some very basic parental skills under constant, professional supervision. This demonstration is a far cry from what is necessary to safely parent a child." Judgment Entry filed February 22, 2008 at Finding of Fact No. 28.
 {¶ 23} An amended case plan filed December 6, 2006 included the following requirements:
 {¶ 24} "1. What behavior will change this concern to reduce risk andaddress safety issues of the child(ren)? Amanda and Sean are able to parent all the children and use appropriate discipline based on the child's age.
 {¶ 25} "2. What activities do family members need to do to make thischange (attempt to utilize and build on family strength when planningservice provision)? Amanda and Sean continue with Positive Parenting until they have learned the needed parenting skills or Positive Parenting has made a decision that they can no longer assist them. Amanda and Sean complete a psychological and follow any and all recommendations made by assessor. Amanda and Sean schedule their psychological by December 30, 2006. Sean and Amanda contact this worker to address any concerns they may have with regards to completing their case plan. Sean and Amanda see this worker monthly or as needed. Amanda and Sean use the agency transportation to attend any scheduled appointments for parenting or their psychological's."
 {¶ 26} An amended case plan filed December 26, 2006 included the following requirements: *Page 8 
 {¶ 27} "1. What behavior will change this concern to reduce risk andaddress safety issues of the child(ren)? Amanda and Sean are able to maintain a home that is free of physical and/or health hazards. Sean and Amanda will not move frequently. Logan and Jason will be supervised at all times.
 {¶ 28} "2. What activities do family members need to do to make thischange (attempt to utilize and build on family strengths when planningservice provision)? Amanda and Sean take out the garbage every day so that the garbage does not accumulate inside the home. Sean and Amanda keep the home clean and free of physical and health hazards that can affect the children. Amanda or Sean get up every morning with the children and supervise them at all times. Sean and Amanda do not move frequently and will pay all their bills to maintain their home. Amanda and Sean sign needed releases or provides receipts to verify that they are maintaining their home. Amanda and Sean permit this worker or any other individual that works at the agency into their home to check on its condition at any time."
 {¶ 29} An amended case plan filed January 4, 2007 included the following requirements:
 {¶ 30} "1. What behavior will change this concern to reduce risk andaddress safety issues of the child(ren)? Chad will no longer set fires. Logan and Jason will have all their medical and developmental needs met.
 {¶ 31} "2. What activities do family members need to do to make thischange (attempt to utilize and build on family strengths when planningservice provision)? Chad attends counseling to determine if he is at risk for setting additional fires. Chad's caregiver takes Chad to counseling as the therapist determines is *Page 9 
appropriate and follows any and all recommendations. Custodian signs all needed releases for this worker to obtain progress reports from Chad's therapist. Amanda has Logan and Jason assessed by Help Me Grow to determine if there is any delays and follows any and all recommendations made for treatment. Amanda takes Logan and Jason to the doctor to get caught up on all shots that are needed. Amanda has Logan's breast area examined by the doctor and follows any and all recommendations made by the physician. Amanda and Sean place all lighters out of reach for all children."
 {¶ 32} Kristina Masten, the current caseworker, opined as to appellant's ability to fulfill the case plan. Although appellant was not originally compliant with the case plan, he has cooperated and completed all the programs required of him. T. at 256, 262. Ms. Masten disputed the claim that appellant had fulfilled the psychological counseling requirement. T. at 257-259. Mark Plotts, appellant's counselor, testified appellant had completed couples counseling, and individual counseling was not needed or required as it was an alternative recommendation by psychologist Dr. Rajendra Misra. T. at 12, 417, 425. Ms. Masten opined permanent custody was necessary because although appellant did all that was required, "they didn't feel that they had really done anything wrong for the Children to be removed so a part of it could also be their unwillingness to see the need to change." T. at 287. Contra testimony to this opinion was given by Jennifer Benline, a social worker with Personal and Family Counseling Services, who worked with appellant through the Positive Parenting Program. T. at 291. Ms. Benline opined appellant was making progress on the specific issues of discipline and interaction with the children. T. at 292-293. Ms. Benline further opined that appellant had fulfilled the goals of the parenting skills program. T. at 305. Lisa Crites, a social *Page 10 
worker with Personal and Family Counseling Services, who worked with appellant through the Help Me Grow Program, also disagreed with Ms. Masten's assessment. Ms. Crites monitored her staff during visitations and found appellant was making progress and meeting the program's goals as of September 2007. T. at 375-382. Ms. Crites believed permanent custody was not appropriate given the fact that appellant was still receiving on-going services. T. at 392-395.
 {¶ 33} As the trial court noted, appellee's major concern was the reactions of the five, four and two year old children to visitation. The children exhibited aggressive, combative, and disruptive behavior when forced to go to visitations. T. at 56-57, 179-180, 197, and 228. The social workers from Personal and Family Counseling Services (Benline, Crites, and Amy Burrier) found the visitations demonstrated that the children were bonding with appellant (hugging at the beginning and end of the visits), and that appellant was participating in the visitations in an appropriate manner. T. at 301, 312, 323, 333-339, 446, 449-450. The trial court addressed this latter testimony by finding these observations not to be credible:
 {¶ 34} "23. Further questioning of Ms. Benline reveals that issues addressed by this program are very basic and limited in scope. After removal of the children, Ms. Benline has witnessed only two visits between the parents and children. Various written documents prepared by Ms. Benline indicate problems with parental progress through the entire program.
 {¶ 35} "24. When asked to relate the parental deficits of the Winters as they are known to Ms. Benline, she related only that they had trouble working together and remembering information provided to them. Ms. Benline did not mention any of the *Page 11 
existing serious issues such as domestic violence, lack of supervision, poor home conditions, and physical abuse of the children. She demonstrates no knowledge concerning the emotional trauma suffered by these children. She exhibits no knowledge that these children have been terrorized in one way or another by their parents.
 {¶ 36} "25. Tommi Kennedy supervises visitation for PFCS. She has supervised one visit with these children in the Winters' home. While normal, common family activities occurred, she also indicates that she had to prompt Mr. Winters and Ms. Matheny to feed the baby when they did not appear to realize the baby was hungry. The testimony and overall knowledge of Ms. Kennedy concerning this family is very limited.
 {¶ 37} "26. This information also fails to address the more complex and serious parental deficits of these parents. Even with this short visit, the need to prompt this couple to feed the baby demonstrates the lack of basic parental skills in this family." See, Judgment Entry filed February 22, 2008 at Findings of Fact Nos. 23-26.
 {¶ 38} From this writer's review of the conflicting testimony, it is apparent that the driving force in appellee's request for permanent custody was the reactions and fears of the five, four, and two year old children. The social workers from Personal and Family Counseling Services believe more time is required. It is clear that each side has reasoned opinions. Appellee's witnesses focused on the children's behavior and appear to be somewhat colored with their view of appellant's obesity and his ability (or inability) to assist in parenting. *Page 12 
 {¶ 39} The guardian ad litem's recommendation filed January 10, 2008 focused on the attitude and reactions of the three oldest children. The guardian emphasized the oldest child's desire to not visit his parents, and the admittedly disruptive behavior of the children prior to the visitations. The guardian concluded the children, with the exception of Russell who was removed at birth, were "severely neglected and abused." This opinion is predicated on appellee's prior involvement with the family from August 2005, culminating in the present dependency complaint filed on October 26, 2006.
 {¶ 40} It is true that appellant has made no real progress on the issues presented from August 2005 to the summer of 2007. By then, the attitudes and reactions of the three oldest children were set in stone. The children's reactions are normal when comparing a mismanaged, dirty environment with the pristine home life offered in foster placements. We note the trial court emphasized this in its findings:
 {¶ 41} "Foster placement has been the only long term, positive family experience in the lives of these children. For the first time, these children have a safe, clean, loving place to live. Despite the serious trauma they still exhibit, these children are now thriving. The foster family in which they are placed is extraordinary." See, Judgment Entry filed February 22, 2008 at Finding of Fact No. 31.
 {¶ 42} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v.Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881. Although a different interpretation or less harsh observations from the same thirty-one findings of fact can be made from the evidence presented, it is not within our scope of review to substitute our judgment on factual issues. From the record, there is clear and convincing evidence to support the trial *Page 13 
court's decision, if you find as the trial court did on the credibility of the social workers from Personal and Family Counseling Services.
 {¶ 43} The best interest test is satisfied by the testimony of Personal and Family Counseling home base worker Kimberly Weitzman, Pathway community service provider Katrina Richards, appellee's social worker Beth Bertini, and therapeutic foster parent Christopher Barto, wherein they all opined the child's life would be turned around and become stable with permanent custody to appellee. T. at 65-66, 108-109, 202-204.
 {¶ 44} Upon review, we find the trial court did not err in granting permanent custody of the child to appellee.
 {¶ 45} The sole assignment of error is denied.
 {¶ 46} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division, is hereby affirmed.
By Farmer, J. Gwin, P.J. and Delaney, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division, is affirmed. *Page 1