OPINION *Page 2 
{¶ 1} On November 27, 2006, the Licking County Grand Jury indicted appellant, David Wolfe, on one count of possessing cocaine in violation of R.C. 2925.11 and one count of possessing drug paraphernalia in violation of R.C. 2925.14. On January 5, 2007, appellant filed a motion to suppress, claiming illegal search subsequent to a stop. A hearing was held on January 29, 2007. By judgment entry filed March 5, 2007, the trial court denied the motion.
 {¶ 2} A jury trial commenced on May 1, 2007. Appellant was found guilty as charged. By judgment entry filed May 2, 2007, the trial court sentenced appellant to one year in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT/ APPELLANT'S MOTION TO SUPPRESS."
 I {¶ 5} Appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 6} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger *Page 3 
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 7} Appellant argues the stop of the vehicle in which he was riding was pretextual so that the officer could conduct a "fishing expedition" and charge him "with something . . . anything." Appellant's Brief at 11.
 {¶ 8} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory *Page 4 
stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 9} A pretextual stop has been defined as a stop wherein the "police use a legal justification for making the stop to search for evidence of unrelated crimes without probable cause or reasonable suspicion."State v. Richardson (1994), 94 Ohio App .3d 501, 506. However, inCity of Dayton v. Erickson, 76 Ohio St.3d 3, 1996-Ohio-431, syllabus, the Supreme Court of Ohio held the following:
 {¶ 10} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity."
 {¶ 11} The United States Supreme Court has held "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop" for officer safety. Maryland v. Wilson (1997),519 U.S. 408, 415.
 {¶ 12} At the beginning of the suppression hearing, the trial court described the motion to suppress as a motion seeking "to suppress physical evidence recovered during the warrantless detention and search." January 29, 2007 T. at 4. The prosecutor went on to state "the motion does not dispute the reason for the stop and only suppresses what took place before his arrest, and, therefore, we should limit this motion to specifically since the stop to the arrest of the Defendant." Id. at 4-5. Defense counsel had "no objection to that." Id. at 5. *Page 5 
 {¶ 13} On November 16, 2006, Newark Police Patrolman Todd Green was working "Team 7 major street crime drug interdiction team." Id. at 6. While on patrol, he observed appellant on the porch of a house which had received numerous drug complaints. Id. at 7. Appellant left the porch and entered a black vehicle. Id. After the vehicle turned around, Patrolman Green observed the vehicle did not have a rear or front license plate, so he initiated a traffic stop. Id. at 7-8.
 {¶ 14} Upon observing the occupants of the vehicle, Patrolman Green recognized appellant as he had identified him "in another house of interest a couple weeks earlier." Id. at 8. The area of the stop was a "high crime, high drug area." Id. at 8-9. Patrolman Green was by himself, and there were three occupants in the vehicle. Id. at 8. Patrolman Green asked appellant to exit the vehicle for officer safety, "to make sure he didn't have anything on him as I was conducting my traffic stop" because it was not unusual for someone who deals or has drugs to be armed. Id. at 9.
 {¶ 15} After exiting the vehicle, appellant admitted to having a knife. Id. Patrolman Green asked appellant if he could pat him down. Appellant replied, "`No, go ahead.'" Id. at 10. Patrolman Green retrieved the knife and continued with the pat-down search as it was not unusual for a "person to have more than one weapon." Id. Patrolman Green felt something in appellant's front "jeweler's" pocket. Id. at 10-11. He asked appellant if he could reach in and retrieve the object and appellant consented. Id. at 11. Patrolman Green pulled out a piece of "burnt chor-boy" which is "used as a filter in a crack pipe." Id. Patrolman Green then placed appellant under arrest for possession of drug paraphernalia. Id. *Page 6 
 {¶ 16} Appellant testified he gave Patrolman Green permission to reach in and take the knife out of his pocket. Id. at 24. Appellant could not recall if Patrolman Green asked him if he could search him further. Id. Appellant stated he did not give Patrolman Green permission to reach into the "little sneak pocket." Id. at 24-25.
 {¶ 17} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis v. Flickinger, 77 Ohio St.3d 415, 418,1997-Ohio-260.
 {¶ 18} Clearly the trial court accepted the testimony of Patrolman Green wherein he testified appellant consented to the pat-down search, and permitted him to retrieve the knife and search his "jeweler's" pocket. We cannot find error with the trial court's decision.
 {¶ 19} Upon review, we find the trial court did not err in denying appellant's motion to suppress.
 {¶ 20} The sole assignment of error is denied. *Page 7 
 {¶ 21} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
 Farmer, J., Gwin, P.J. and Wise, J. concur. *Page 8 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed. *Page 1