[Cite as *State v. Kracker*, 2013-Ohio-2795.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No.      26574 |
| | | |
| Appellee | | |
| | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| JUSTIN R. KRACKER | | COURT OF COMMON PLEAS |
| | | COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     CR 11 12 3400 (D) |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2013

BELFANCE, Judge.

{¶1} Justin Kracker appeals his convictions from the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} Deputy Marshall Jeffery Jones received an anonymous tip that Timothy Baker was living at 113 West Tallmadge Road in Akron. When Deputy Marshall Jones knocked on the door of the house at that address, Mr. Kracker answered. Deputy Marshall Jones asked if Mr. Baker was inside and requested permission to search for him. Mr. Kracker denied Deputy Marshall Jones' request. However, Ronald Bowman, the owner of the house and another occupant, heard the request and gave Deputy Marshall Jones permission to search.

{¶3} While Deputy Marshall Jones was searching one of the upstairs bedrooms, he discovered a duffel bag in which he observed items he believed to be part of a methamphetamine lab. He called for backup and spoke with the people present at the house: Mr. Kracker, Mr.

Bowman, and James Hershberger. When Deputy Marshall Jones asked the men whose room the duffel bag had been in, Mr. Kracker indicated that it was his room; the other men also indicated that it was Mr. Kracker's bedroom.

{¶4} Officer Christopher Crockett of the Akron Police Department's Clandestine Lab Enforcement Team arrived at the house to investigate. From witnesses, he learned that "there w[ere] two bedrooms, one with the meth lab, and the other one was [Mr. Kracker's] and Rhonda[ Bowman's] room, and they were the only ones that had access to those two rooms."[1] Officer Crockett also confirmed that the materials in the duffel bag, as well as materials discovered in the house's basement, were part of a methamphetamine lab.

{¶5} Mr. Kracker was indicted for illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, aggravated possession of drugs, endangering children, and possession of drug paraphernalia. The State dismissed the charges of aggravated possession of drugs and drug paraphernalia prior to trial, and a jury found Mr. Kracker guilty of the remaining charges. The trial court merged all three counts for the purposes of sentencing and sentenced Mr. Kracker to a nine-year term for illegal manufacture of drugs. Mr. Kracker has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE OTHER ACTS EVIDENCE AGAINST APPELLANT.

---

[1] Ms. Bowman is Mr. Kracker's girlfriend and Mr. Bowman's sister.

{¶6} Mr. Kracker argues that the State should not have been allowed to introduce evidence of his prior arrests for making methamphetamine. Although we agree in part, we find the trial court's error to be harmless under the circumstances of this case.

{¶7} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B) is "to be strictly construed against the state and conservatively applied by the trial courts." *State v. Bronner*, 9th Dist. No. 20753, 2002-Ohio-4248, ¶ 93. When deciding whether to admit other acts evidence, a trial court should engage in a three-step analysis. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Id*. at ¶ 20.

{¶8} "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus. Accordingly, we review the trial court's decision for an abuse of discretion. *Id*. An abuse of discretion implies that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} Mr. Kracker was indicted for violating R.C. 2925.041(A) by committing illegal assembly or possession of chemicals for the manufacture of drugs. R.C. 2925.041(A) provides: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶10} Officer Crockett testified, over the objection of Mr. Kracker's counsel, that Mr. Kracker had been arrested in 2004 and 2005 for crimes related to the production of methamphetamine. Officer Cracker went on to testify about conversations he had with Mr. Kracker following both of those arrests. According to Officer Crockett, following the 2004 arrest, Mr. Kracker admitted to gathering materials for individuals who were producing methamphetamine; however, he denied having knowledge of how to produce it. Officer Crockett also testified that, following the 2005 arrest, Mr. Kracker gave him a detailed description of how to cook methamphetamine via the red phosphorus method. The State introduced an audio recording of the 2005 interview into evidence. According to Officer Crockett, prior to 2009, the red phosphorus method was "the dominant" method in Akron, estimating that, during his eight years on the Clandestine Lab Enforcement Team, he had investigated 450 red phosphorus labs.

{¶11} The trial court should not have allowed the State to introduce evidence of Mr. Kracker's arrests for methamphetamine production and for collecting the supplies for making methamphetamine. They were not relevant to any fact of consequence in this case. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 20. Furthermore, the references to Mr. Kracker's arrests was clearly offered "to show activity in conformity therewith[,]" i.e. that he

had produced methamphetamine before and that he was doing so again.[2] *See id.* Finally, even assuming that the fact that Mr. Kracker was arrested was offered to provide context to his conversations with Officer Crockett, the prejudice to Mr. Kracker far outweighed any probative value the testimony had. *See id*.

{¶12} Turning to the actual content of Mr. Kracker's conversations with Officer Crockett, the trial court told the jurors, "[Y]ou may consider this information about the 2004 case for the limited purpose of considering the defendant's knowledge in preparation concerning methamphetamine." Regarding the evidence from the 2005 incident, the trial court told the jurors, "I'm allowing this evidence for the limited purpose * * * to show, as it may relate to this case, the defendant's knowledge of the process of preparing methamphetamine; also for the purpose of indicating his plan, scheme, and even identity."

{¶13} We agree that Mr. Kracker's knowledge of methamphetamine production was relevant to whether Mr. Kracker knowingly assembled or possessed the chemicals and whether he intended to use the materials to manufacture methamphetamine. However, prior to reaching the question of whether Mr. Kracker intended to use the materials to manufacture methamphetamine, the jury would have needed to determine that Mr. Kracker was the person who possessed those materials. For this reason, it is troubling that the trial court specifically told the jury they could use the Mr. Kracker's 2005 statements to Officer Crockett to determine that the materials in the house were his. The State suggests that this is a proper use under Evid.R. 404(B) because of how uncommon the red phosphorus method has become in the Akron area, pointing to Officer Crockett's testimony that the lab in this case is the only red phosphorus lab

---

[2] The State even asserted in its brief this information regarding prior acts was "relevant to show that [Mr.] Kracker assembled the chemicals used to manufacture methamphetamine and manufactured the methamphetamine that the police found in the residence."

found in Akron between 2010 and 2012. In other words, the State contends that Mr. Kracker's possession of red phosphorus was so unique and unusual as to constitute an identifying marker of identity. However, the State's argument is flawed. When Mr. Kracker relayed his knowledge of the red phosphorus method, that method was the predominant method of production in Akron. Thus, knowledge of the method could not serve as a unique indicator of a person's identity. However, if, for example, the last five red phosphorus labs found in the Akron area over a five-year stretch had been used by Mr. Kracker, that fact could be relevant and admissible under Evid.R. 404(B) to show that this lab was his. Alternatively, if evidence was introduced that the other people living in the house did not know how to use the red phosphorus method to make methamphetamine, then the fact that Mr. Kracker did know how to use that method could possibly be admissible to show that the lab was his. However, the fact that only one such lab had been found in the last three years did not make Mr. Kracker's knowledge of the red phosphorus method relevant for purposes of identity. By its very nature, a single occurrence does not constitute a pattern, and his knowledge of the dominant method of producing methamphetamine could not serve as a unique marker of Mr. Kracker's identity.

{¶14} Furthermore, there is no evidence that Mr. Kracker's use of the red phosphorus method is so distinct that it makes Mr. Kracker the likely owner of the materials in the house. Officer Crockett testified that the red phosphorus method was "the dominant" method for producing methamphetamine in Akron prior to 2009 and that the recipe was readily available online. There was no evidence that Mr. Kracker's formula was unique in any way. For example, there is no evidence that Mr. Kracker deviated from the usual red phosphorus method by using unusual ingredients (e.g. mixing cinnamon into the methamphetamine) or that his method produced an unusual product (e.g. Mr. Kracker's methamphetamine is green). Thus, the fact that

Mr. Kracker knew how to use the red phosphorus method was not admissible to prove the identity of the person operating the lab under the circumstances of this case.

{¶15} Although the trial court should not have allowed Detective Crockett to testify about Mr. Kracker's previous arrests or told the jury that it could use Mr. Kracker's knowledge of the red phosphorus method to demonstrate identity, much of the substance of the detective's testimony was relevant to Mr. Kracker's knowledge and intent. We must nevertheless determine whether the trial court's errors were harmless. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

{¶16} Deputy Marshall Jones, who was first at the home, testified that Mr. Kracker, Mr. Bowman, and Mr. Hershberger all told him that the bedroom where the duffel bag was found was Mr. Kracker's. When Officer Crockett subsequently arrived at 113 West Tallmadge Avenue, he also spoke with Mr. Kracker. Officer Crockett testified that Mr. Kracker told him that "he knew [the lab] was in the room where his dresser and clothes were[]" and that the other people living in the house had nothing to do with the lab. Officer Crockett testified that items used to manufacture methamphetamine were found in the basement and in an upstairs bedroom, which was the bedroom Mr. Kracker had described to him when he had first arrived on the scene. He also testified that Mr. Kracker was the only person in the home who had a young child and that, in the bedroom, the officers found baby blankets. Furthermore, Officer Crockett testified that Mr. Kracker's clothes "reeked of a meth lab[]" and identified the smell as being the one associated with the red phosphorus method of methamphetamine production.

{¶17} Under the circumstances of this case, we conclude that the partially improper instruction for the Evid.R. 404(B) evidence and the admission of evidence concerning Mr. Kracker's prior arrests were harmless in light of the overwhelming evidence of guilt. Mr.

Kracker's statements to Deputy Marshall Jones and Officer Crockett were essentially an admission that the lab was his. This is not a case where other people solely attributed the lab's ownership to the defendant. Mr. Kracker told Deputy Marshall Jones that the room where the duffel bag was located was his, and this was confirmed by Mr. Bowman and Mr. Hershberger, who both said that only Mr. Kracker and his girlfriend had exclusive access to that bedroom. Mr. Kracker also told Officer Crockett that the duffel bag was in the room with the dresser in which he kept his clothes, he was aware of the existence of the lab and that the other housemates "had no involvement" with the lab. Thus, Mr. Kracker's own statements indicated that he was responsible for the room, that he was aware of the methamphetamine equipment inside his room, and that no one else in the house was involved. Mr. Kracker's statements were just short of a direct admission that he possessed the lab. Accordingly, any error in telling the jury they could use Mr. Kracker's knowledge of the red phosphorus method as proof of identity and the reference to his prior arrests were harmless given Mr. Kracker's statements.

{¶18} Mr. Kracker's assignment of error is overruled.

III.

{¶19} In light of the foregoing, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

EVE V. BELFANCE
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶20} I concur in the majority's decision to overrule Kracker's assignment of error, but I disagree with the majority's analysis. I would conclude that the trial court did not err by admitting evidence of Kracker's prior cases pursuant to Evid.R. 404(B).

{¶21} Evid.R. 404(B) provides:

Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. In may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶22} "Other acts" evidence is properly admitted where it provides a "context for the alleged crimes" and makes the defendant's "actions more understandable to the jurors." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 72. In addition,

> [e]vidence showing a modus operandi [or plan] is admissible because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator.

(Internal quotations omitted.) *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 83. Moreover, "'[o]ther acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B).'" *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio 7044, ¶ 45, quoting *State v. Jamison*, 49 Ohio St.3d 182 (1990), syllabus. "Other acts" evidence used to show the defendant's plan "must be related to and share common features with the crime in question." *Noling* at ¶ 45, citing *State v. Lowe*, 69 Ohio St.3d 527 (1994), paragraph one of the syllabus.

{¶23} At the hearing on the motion in limine to exclude evidence of the 2004 and 2005 encounters between Officer Crockett and Kracker, the State asserted that it would present evidence that Kracker was involved with methamphetamine labs that used the red phosphorous method of production, a method that was once common but no longer is. In fact, Officer Crockett testified that in the past two-and-a-half years, only one methamphetamine lab out of more than 200 in his jurisdiction used the red phosphorous method and that lab was the instant one found in this case in the bedroom where Kracker's personal items were also found.

{¶24} The trial court found that testimony about the 2004 incident was admissible to show Kracker's knowledge of the process of gathering chemicals for methamphetamine production, as well as absence of mistake. The court found that testimony about the 2005

incident was admissible to show Kracker's scheme or method for carrying out the instant offense. The trial court asserted that it would issue limiting instructions with regard to both prior incidents.

{¶25} During the hearing on the motion in limine, defense counsel theorized that a crucial issue in this case was the identity of the owner of the methamphetamine lab. He argued that another resident in the home, Timothy Baker, was responsible for the lab, not Kracker. At trial, defense counsel promulgated the theory that someone else, specifically, Mr. Baker, was responsible for the methamphetamine lab. He explained that some of Kracker's personal belongings were in the room where the lab was found only because Kracker previously inhabited the room, but that he had moved to another room next door with his girlfriend and child at the time the lab was discovered. Accordingly, defense counsel maintained the theory of the case that the identity of the owner of the methamphetamine lab was at issue.

{¶26} At trial, Officer Crockett testified that only one methamphetamine lab out of more than 200 in the past two-and-a-half years used the red phosphorous method as opposed to the currently prevalent one-pot or "shake-and-bake" method. He then testified that he encountered Kracker in 2004 after receiving complaints about a suspected methamphetamine lab in his home. The officer testified that Kracker spoke with him after his arrest and admitted that he had gathered the chemicals for the lab for others, but that he did not know how to produce the drug with the chemicals. The chemicals gathered by Kracker were of the type used in the red phosphorous method of production. The trial court issued an immediate limiting instruction, instructing the jury that they could not consider this testimony as evidence of Kracker's conduct in conformity with past conduct for purposes of his guilt. Instead, the jury was directed that it

could only consider the evidence for the limited purpose of considering Kracker's knowledge regarding preparation for methamphetamine production.

{¶27} Officer Crockett further testified that he spoke with Kracker after another arrest in 2005 based on the existence of a red phosphorous methamphetamine lab found in his home. The officer testified that Kracker explained in great detail how to manufacture methamphetamine using the red phosphorous method. That interview was played for the jury. The officer testified that the chemicals described by Kracker in 2005 were the same as the chemicals found in the instant case. The trial court thereafter issued another limiting instruction, directing the jury that it could only consider that evidence for the limited purposes of Kracker's knowledge of methamphetamine production, his plan or scheme to manufacture, and as to identity of the owner of the lab.

{¶28} I agree with the trial court that evidence of both the 2004 and 2005 prior incidents were properly admissible. In the case of the 2004 incident, that evidence tended to show Kracker's knowledge of the chemicals necessary to manufacture methamphetamine. In the case of the 2005 incident, that evidence tended to show his knowledge of the chemicals and process of manufacturing methamphetamine, as well as his plan or scheme to make it in the instant case. Moreover, in both prior cases, the same method, i.e., red phosphorous method, was implicated by the chemicals and Kracker's statements. The instant methamphetamine lab was the identical type of red phosphorous lab, notwithstanding the evidence that that type of lab had become extremely rare. In fact, the instant lab was the only such lab out of more than 200 in the past two-and-a-half years to use that method. Such evidence tended to establish the identity of the person responsible for the lab based on the behavioral fingerprint associated with the instant

crime. *See McKnight* at ¶ 83. Accordingly, I would conclude that the trial court did not abuse its discretion by admitting evidence regarding the 2004 and 2005 prior incidents involving Kracker.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.